Belknap,
No. 5106.

PEERLESS INSURANCE COMPANY *v.* HAROLD CLOUGH *& a.*

Argued May 7, 1963.
Decided July 30, 1963.

*Wescott & Millham* (*Mr. Harold E. Wescott* orally), for the plaintiff.

*George P. Cofran* and *L. Wilder Quint* (*Mr. Quint* orally), for the defendant Clough.

*Normandin, Normandin, Cheney & O'Neil* for the defendants Clem and Jacobs furnished no brief.

BLANDIN, J.   The over-all question here may be easily stated. It is the interpretation of an insurance policy which is for this court.   *Hogan* v. *Lebel*, 95 N. H. 95, 97.   However, between the Scylla of what the Trial Justice has termed the confusing, bewildering and misleading provisions of the policy, and the Charybdis of conflicting decisions, it is by no means easy to determine the answer.   The specific issues are whether we should sustain the Court's rulings that the defendant Clough had no coverage because of the exclusionary clauses relating to (1)

property in the "care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control" and (2) "Products – Completed Operations." It appears that for several years before the occurrence of the losses from which the present proceeding arose, the defendant Clough had taken out policies similar, though not precisely identical with, the one here involved. Each policy was stated to be a "renewal" of the previous one. For reasons which will hereinafter appear, we hold that the last policy introduced in evidence, covering the period from May 1958 to May 1959, is applicable.

The Trial Court has ruled that the plaintiff is not obligated to defend the actions brought by Clem and Jacobs against the defendant Clough or to satisfy any judgments rendered therein upon two grounds. One ground is that the time when the allegedly negligent acts causing the fires occurred, rather than the time of the fires, is controlling. Since at the time of the alleged negligence the premises were sustainably found to be within "the custody or control" of the defendant and over which he was "exercising physical control" the Court held that the clause excluding from coverage losses suffered in these circumstances was decisive against Clough. However, the majority – and we believe the better rule – is that the time of the occurrence resulting in the loss or damage, and not the time of the negligence, determines whether there is coverage under the policy. *Nielson* v. *Travelers Indemnity Co.*, 174 F. Supp. 648 (N. D. Iowa 1959), *aff'd Travelers Indemnity Co.* v. *Nielson*, 277 F. 2d 455 (8th Cir. 1960); *Export S.S. Corporation* v. *American Ins. Co.*, 106 F. 2d 9 (2d Cir. 1939), 108 F. 2d 1013 (2d Cir. 1940). See also, *Remmer* v. *Glens Falls Indem. Co.*, 140 Cal. App. 2d 84; Annot. 57 A.L.R. 2d 1385. See *Desrochers* v. *Casualty Co.*, 99 N. H. 129, 133.

Furthermore, in the case before us the event insured against is "destruction of property" and not negligence, and it is expressly stated under the heading "Policy Period" that "This policy applies only to occurrences during the policy period." Bearing in mind that the instrument is to be interpreted as the ordinary person in the shoes of the insured would understand it (*Hoyt* v. *Insurance Co.*, 92 N. H. 242, 243; *Lalos* v. *Tickler*, 103 N. H. 292), we hold that the Court erred in its ruling. The defendant's exceptions thereto are sustained.

No findings were made that at the time of the fires the property of either of the claimants Clem and Jacobs was in the "care, custody or control of the insured" or was "property as to which the insured for any purpose [was] exercising a physical control."

At the time of the fires, all work on both cottages had been completed and the properties had been turned over to their respective owners. It could not be found upon the record before us that either property was within the above exclusionary clause. The Court's finding to the contrary rested upon the erroneous assumption that the time of the occurrence of the alleged negligence from which the fires resulted, rather than the time of the fires, was controlling. Therefore the finding cannot be upheld, and the defendant's exception to it is sustained.

Another ground upon which the decree was based is that the "Products – Completed Operations" exclusion, relates not only to products which are completed, but also means that no losses sustained after the insured has finished his contracting operations upon the property may be recovered. Whether the Court's conclusion is correct depends upon the interpretation to be placed upon the policy. We are well aware that through no fault of insurance companies, grave problems are often created for them by the fiercely adversary interests of their insureds, as well as by the claims of third parties. If companies are to continue solvent and capable of serving an important public interest, they must carefully protect themselves against risks which they have not covered and for which no premiums have been paid to them. However, it must be borne in mind, as previously stated, that the policy is held to mean what a reasonable person in the position of the insured would think it meant. *Hoyt* v. *Insurance Company*, *supra*. If, in an overzealous endeavor to guard itself against every imaginable contingency, the company deliberately writes what the court has found to be a needlessly misleading and obscure policy (which, if it could be comprehended at all by the ordinary insured, would lead him to believe he was covered against a certain risk) it must accept the consequences. Here, the Court expressly found that "ordinary men would be confused, bewildered and misled by the manner in which the policy is written." It further found that, had the plaintiff desired to limit coverage as it now claims it did, to only the accidents which occurred while work of construction was in progress at a given location, it would have been easy to have said so in "plain and simple language in the Definition of

Hazards. Division 1, Premises – Operations."

An examination of the instrument in force from May 10, 1958 to May 10, 1959, which for reasons hereinbefore stated we hold to be the applicable policy, since the fires occurred in the fall of 1958, convinces us that these findings are sustainable. On the face of the instrument, or what is known as the declaration sheets, it is stated that "Business of the named insured is contractor." In the description of his operations, it states that they consist of "carpentry in the construction of detached private residences for occupancy by one or two families and private garages in connection therewith."

The policy is entitled "Schedule General Liability Policy" covering manufacturers and contractors. The declaration sheet, together with endorsement 5, which is stated to be a part of the original policy, lists four items. The first contains the name and address of the defendant insured, and his business as "contractor." The second covers the policy period from May 10, 1958 to May 10, 1959. The third reads as follows: "The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges . . . . "

Item 4 is a description of the hazards. It lists the various sorts of hazards which may be insured against, with the premium bases and rates for A, Bodily Injury Liability, and B, Property Damage. There are five hazards enumerated: (1) Premises – Operations; (2) Elevators – number at premises; (3) Independent Contractors; (4) Products – Completed Operations; (5) Contractual – Types of Agreements.

Under the large black letter heading "INSURING AGREEMENTS" there is a subheading "Coverage B – Property Damage Liability," wherein the plaintiff agrees: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof."

Under the heading "DEFINITION OF HAZARDS" subheading "Division 1 Premises – Operations" the policy reads: "The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto or if M & C [manufacturers and contractors] all operations." The insured paid a premium for this division only.

Under the subheading "Division 4 Products – Completed Operations" appearing under the main heading "DEFINITION OF HAZ-

ARDS" there are two paragraphs which read as follows: "(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided, further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations." The premium for "Products – Completed Operations" hazard would have been based on "Sales." The insured obviously had no interest in insurance on manufactured goods and products.

Under the large black lettered heading "EXCLUSIONS" which is separated by paragraphs from the clauses just quoted, it is stated that the policy does not apply to "(c) under division 1 of the Definition of Hazards, if M & C to (1) the Independent Contractors Hazard or (2) the Products-Completed Operations Hazard."

Thereafter followed many paragraphs irrelevant to the issues in controversy here, and upon a separate sheet of paper appears the statement "(I) under coverage B . . . to (4) any goods, products or containers thereof manufactured. sold, handled or distributed or premises alienated by the named insured, or work

completed by or for the named insured, out of which the accident arises."

We are unable to accept the plaintiff's proposition that the defendant should have understood from what the Court has found to be these confusing and misleading statements, that he was not covered for the losses which resulted from the fires in the Clem and Jacobs homes. The defendant was a contractor, and he was expressly insured in plain and unequivocal terms against risks involved in "*all operations.*" (Emphasis supplied). Nothing could be more obvious than that damage arising from his allegedly negligent construction of certain fireplaces in homes he was building for Clem and Jacobs, on their land on a cost-plus basis, is just such a risk as he had a right to understand was covered by his policy. We are not involved here with one making products, but rather, with a contractor building cost-plus houses on others' lands. He had no need for protection against any hazard connected with products; he neither produced nor dealt in such in any ordinary sense of the word. Furthermore, the completed operations hazard is tied in by hyphen, format and premium with "products" liability coverage and could not be insured against separately and apart from products liability. The products–completed operation hazard appeared to bear no relation to such construction operations as the defendant was carrying on here.

Again the Court has sustainably found that the defendant had no reason to believe that he needed any coverage for products. He would not naturally think that his coverage as a contractor was restricted or affected in any manner by anything contained in a definition boldly headed "Products–Completed Operations" a subject which did not concern him.

The Court has also found that the defendant had no reason to believe that he needed elevator, contractual or independent contractor protection–all of which tend to confirm the defendant in his belief that he was protected under the sweeping provisions of "Operations–Premises" coverage. If a careful study by a competent lawyer would have led him to the probable conclusion that a person engaged solely in contracting was not covered under this policy, this is not the test which we must apply. As has been stated before, the policy is to be interpreted as a reasonable person in the position of the insured here would interpret it, and we hold that such would believe that he was covered.

While the authorities are conflicting, other courts faced with situations comparable to that which confronts us here have concluded that the "Products-Completed Operations" exclusion does not apply in the case of an insured contractor. *Nielson* v. *Travelers Indemnity Co.,* 174 F. Supp. 648 (N. D. Iowa 1959); affirmed in *Travelers Indemnity Co.* v. *Nielson,* 277 F. 2d 455 (8th Cir. 1960); *McNally* v. *American States Insurance Co.,* 308 F. 2d 438 (6th Cir. 1962); *Hoffman & Klemperer Co.* v. *Ocean Accident & Guar. Corp.,* 292 F. 2d 324 (7th Cir. 1961); *Kendrick* v. *Mason,* 234 La. 271.

In *American Motorists Ins. Co.* v. *Nashua Lumber Co.,* 103 N. H. 147, relied upon by the plaintiff, the insured lumber company dealt in such products as lumber and cement. The policy plainly excluded coverage if the accident occurred after the insured had "relinquished . . . possession" of the "goods sold or handled." The insured had delivered lumber and cement to the premises of a purchaser, and after delivery the accident happened. Since the lumber company was dealing with products, it should have reasonably understood that the "Products-Completed Operations" exclusion would apply. See *Smedley* v. *Employers Mut. Liability Ins. Co.,* 143 Conn. 510. The case is therefore clearly distinguishable from the one before us and is not authority for the plaintiff's position. So, too, we believe that other similar cases cited by the plaintiff are not persuasive.

In summary, the plaintiff gave the defendant coverage in a single, simple sentence easily understood by the common man in the market place. It attempted to take away a portion of this same coverage in paragraphs and language which even a lawyer, be he from Philadelphia or Bungy, would find it difficult to comprehend. The net result was to lead the insured to interpret the policy as giving him coverage against the hazard for which he is now being sued. We therefore hold that the exclusions relied upon by the plaintiff are inapplicable and that it is bound to defend the actions against the defendant and to satisfy, within the policy limits, any judgments ordered thereon.

In view of the result reached, it is unnecessary to discuss other issues raised, and the order is

*Judgment for the defendants.*

KENISON, C.J. and LAMPRON, J. dissented; the others concurred.

LAMPRON, J., *dissenting:* I agree with the majority opinion that in construing this insurance policy this court should consider it as a whole in the light of all the circumstances and interpret it as a reasonable person in the position of the insured should understand it. *Lalos* v. *Tickler*, 103 N. H. 292, 295. Our rule differs in this respect from that prevailing in Iowa and in most, if not all, the jurisdictions relied on in *Nielson* v. *Travelers Indemnity Co.*, 174 F. Supp. 648 (N. D. Iowa 1959) affirmed in *Travelers Indemnity Co.* v. *Nielson*, 277 F. 2d 455 (8th Cir. 1960) by which the majority supports its reversal of the decree of noncoverage made by the Trial Court. Under their rule the insurance contract must be liberally construed in favor of the insured wherever possible and strictly construed against the insurer. *Hercules Co.* v. *Royal Indemnity Company*, 171 F. Supp. 746 (S. D. N. Y. 1959); *Ocean Accident & Guarantee Corp.* v. *Aconomy Erectors*, 224 F. 2d 242, 247 (7th Cir. 1955).

It must be admitted that this policy could have been couched in different language and framed in a manner which might have expressed more clearly its agreements, conditions and exclusions. However this deficiency is not to be turned into a license to ignore the language of the contract as written and to discount the meaning which a reading of the whole policy reveals. *Smedley Co.* v. *Employers Mut. Liability Ins. Co.*, 143 Conn. 510.

The policy found applicable by the majority opinion was a manufacturers' and contractors' schedule general liability policy issued by the company to Clough for the period from May 10, 1958 to May 10, 1959. Although it could have been written to cover four divisions of hazards, by its terms "the insurance afforded is only with respect to such . . . coverages and divisions . . . as are indicated by specific premium . . . charges." The declaration attached to it showed that Clough paid premiums for coverage against the hazards under division 1 only.

By its terms this policy insured Clough against liability for bodily injury and for property damage caused by accident and arising out of the ownership, maintenance or use of the premises and all operations. It specifically provided however that this policy does not apply under division 1 (purchased by Clough) to the products – completed operations hazard which would be covered under division 4 (not purchased by Clough). Among the hazards thus excluded is "operations, if the accident occurs

after such operations have been completed or abandoned." Division 4 – products - completed operations (2).

It seems that a more than casual reading of this policy by an ordinarily intelligent insured would give him to understand that there was a difference between operations and completed operations and that the coverage which he purchased covered accidents occurring while all his operations were being performed but excluded liability for accidents which took place as a result of a completed operation. *Employers Insurance Company of Alabama* v. *Rives*, 87 So. 2d 646 (Ala. App.); *Clauss* v. *American Automobile and Insurance Company*, 175 F. Supp. 641, 644 (E. D. Penn. 1959); *Zingale* v. *American Surety Company*, 105 Ohio App. 16; *Butler* v. *United States Fidelity & Guaranty Co.*, 277 S. W. 2d 348 (Tenn. 1955); *Baker* v. *Maryland Casualty Co.*, 73 R. I. 411. To decide otherwise results in holding the insurer liable indefinitely for accidents arising from defective workmanship, a coverage which is afforded by division 4 of the policy, not purchased by Clough, and excluded from the coverage under division 1, the only coverage for which Clough paid a premium.

This conclusion is strengthened by an examination of the facts in this case, Clough contracted with the Clems to furnish the labor and material necessary to build them a cottage on their land. He started in November, 1955, completed the fireplace in June 1956 and all of his work in the spring of 1957. The cottage was damaged by fire on September 13, 1958, after the Clems had occupied it for over a year. Under a similar contract Clough started to build a cottage for the Jacobs on their land in May, 1957. The fireplaces were completed in September, 1957 and all of his work was finished in November, 1957. The fire damage occurred one year later, November 16, 1958. In each instance all of Clough's operations were completed months before the policy period began on May 10, 1958.

To hold that there is coverage for these fire losses under this policy is pushing to the point of unreasonableness our test that a policy is to be interpreted to mean what a reasonable person in the position of the insured would have understood it to mean. *Hoyt* v. *Insurance Co.*, 92 N. H. 242, 243. No reasonable man in the position of the insured could expect that a policy covering all his operations from May 10, 1958 to May 10, 1959, would cover his liability for negligent operations which took place prior thereto in June, 1956 and September, 1957,

86

and had been completed at that time long before the policy became effective. *Butler* v. *United States Fidelity & Guaranty Co.*, *supra.* See *American Motorists Ins. Co.* v. *Nashua Lumber Co.*, 103 N. H. 147, 151.

I would hold as the Trial Court did that there is no coverage and overrule defendants' exceptions.

Kenison, C.J., concurs in this opinion.