169 So.2d 877 (1964)
NEW AMSTERDAM CASUALTY COMPANY, an insurance company, Appellant,
v.
Richard M. ADDISON, d/b/a Addison Electric Company, Appellee.
Nos. 4096, 4102.
District Court of Appeal of Florida. Second District.
October 21, 1964.
Rehearing Denied November 25, 1964.
*878 Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellant.
Howard M. Duncanson, Hollywood, for appellee.
KANNER, Judge (Ret.).
The objective sought to be accomplished here by appellant, New Amsterdam Casualty Company, defendant below, is reversal of the declaratory decision in favor of plaintiff-appellee, Richard M. Addison, ordering that the insurer was responsible for defending of any claim "arising out of Division 1 of the policy, and any judgment growing out thereof, although work may have been completed, it being contemplated that the policy should cover any negligent work that might have been performed by the plaintiff in the operation of its business covered by the said policy." The matter appeared first in this court through appellant's notice of interlocutory appeal, followed shortly thereafter by its filing of an appeal from the same order, designating it as a final decree.
Another suit had been instituted against appellee by a third party for personal injuries claimed to have resulted from discharge of an electrical current from an uninsulated section of wire in a swimming pool where the third party was swimming and upon which appellee had performed services as an electrical contractor. The work of appellee had been done on June 16, *879 24, and 25, 1959; the injuries complained of were sustained on July 11, 1959, allegedly as a result of appellee's negligence in performance of the work.
The parties in this declaratory suit in chancery stipulated that "the question for determination by the Court is one of interpretation of the policy." Other matters stipulated were that the insured is engaged in the electrical contracting business and not in manufacturing; that, when appellee did the electrical work, it was finished and that appellee considered it completed, had done what he had contracted to do and considered that he had done it in a workmanlike manner, for which he was paid by the prime contractor.
Appellant poses as its appeal question, "Whether the trial court was correct in holding plaintiff was covered under Division 1 of the policy for an accident which occurred after the completion of plaintiff's operations at the scene of the injury, and plaintiff had not paid the premium for coverage under Division 4 of the policy, which division expressly provides for completed operations coverage."
Here, as below, construction of the written instrument is the crux of the judicial labor required.
In general, the policy, entitled "Schedule Manufacturers' and Contractors' Liability Policy," is divided into parts 1 and 2, part 1 being composed of printed matter, while part 2 is the declarations page.
On the declarations page, "Item 1" and "Item 2" contain typed insertions identifying the policy by number and by the insured's name and individual data. The policy period is stated as being from January 1, 1959, to January 1, 1960. The business of the insured is specified as that of an electrician.
Item 3 comprises the major part of the declarations page. Under this, there is the preliminary statement:
"Item 3. The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."
There is then set up a schedule of coverages, with typed figures supplied to show limits of liability under appellee's coverages.
Next under item 3 of the declarations is the "Description of Hazards" setting out "Div. 1. Premises-Operations," "Div. 2. Elevators," "Div. 3. Independent Contractors," and "Div. 4. Products-Completed Operations," with columns along the right side of the page for computation of advance premiums. Hazards are described and premiums are computed and shown only under division 1, premises-operations. Division 1 of appellee's coverage reads as follows:
"Electrical Wiring  within buildings, including installation or repair of fixtures or appliances. Installation of electrical machinery or auxiliary apparatus to be separately rated.
"Electrical Apparatus Installation or Repair  Erection of Poles, stringing or wires, installation of service transformers on poles or on the outside of buildings or the making of service connections to be separately rated."
Part 1 contains four centered topics in large print, "INSURING AGREEMENTS," "DEFINITION OF HAZARDS," "EXCLUSIONS," and "CONDITIONS," covering pages 1 through 5 set up contextually in small print. With its subdivisions, references, and cross references, part 1 comprehends in excess of 80 different parts designated by topics, numerals, or letters, most of these appearing under "Exclusions" and "Conditions."
*880 Under "Definition of Hazards" appears the defining language for the divisions set out on the declarations page:
"Division 1-Premises Operations
"The ownership, maintenance or use of premises and all operations." (This is the division under which appellee was insured.)
* * * * * *
"Division 4-Products-Completed Operations
"(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or prodducts has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 3 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold.
"(2) Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be `operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 3 of the declarations specifically includes completed operations."
The "Exclusions" of part 1 include paragraphs "(a)" through "(q)" preceded by the words, "This policy does not apply." Paragraph (c) reads:
"(c) under division 1 of the Definition of Hazards and under coverage C, to (1) the Independent Contractors Hazard or (2) the Products-Completed Operations Hazard."
Division 4, "Products-Completed Operations," is the coverage which appellant says appellee was required to have purchased in order to acquire protection for completed operations.
For better understanding of the problem before us, we have quoted portions of the policy and have depicted the physical makeup of the instrument, indicating its length and the numerous topics comprehended.
The parties are in accord that this is a case of first impression in Florida. We therefore preface our discussion by stating our awareness of certain principles of construction which are firmly ensconced in the jurisprudence of this state. Thus, we bear in mind that in construing an insurance policy to determine the intention of the parties, a court must consider the instrument in its entirety; and, if reasonably possible, that construction should be adopted which will give effect to the total instrument and to each of its various provisions. New York Life Ins. Co. v. Kincaid, 1939, 136 Fla. 120, 186 So. 675; King v. Sturge, Fla.App. 1959, 113 So.2d 257. If the language used is clear and unambiguous, it will be accorded its natural meaning. Pafford v. Standard Life Ins. Co. of Indiana, Fla. 1951, 52 So.2d 910. The court should not extend strictness in construction to the point of adding a meaning to language that is clear. Rigel v. National Casualty Company, Fla. 1954, 76 So.2d 285. For statement of the above principles, see 18 Fla. Jur., Insurance, sections 93 and 95, pages 86, 88, and 89.
*881 Also, Florida law renders applicable to contracts of insurance the principle that, where a contract of insurance is prepared and phrased by the insurer, it is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language is doubtful, uncertain, or ambiguous. Fireman's Fund Ins. Co. of San Francisco, Cal. v. Boyd, Fla. 1950, 45 So.2d 499. The general rule is that, if there are terms in an insurance policy which are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot be clearly ascertained by the application of ordinary rules of construction, these terms are to be construed strictly and most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of payment to the insured. Beasley v. Wolf, Fla.App. 1963, 151 So.2d 679. The accepted rationale back of this rule is that insurance policies are prepared by experts in this complex area, and the intricate interplay of their various provisions is difficult for a layman to understand. The Praetorians v. Fisher, Fla. 1956, 89 So.2d 329. Where there are two interpretations which may fairly be given to language used in a policy, the one that allows the greater indemnity will govern. Howard v. American Service Mut. Ins. Co., Fla.App. 1963, 151 So.2d 682. Statement of these principles may be found in 18 Fla.Jur., Insurance, sections 94 and 95, pages 86, 87, 88, and 89.
Having before us these principles, our task resolves itself with more particularity to a determination of whether or not, in application of the rules of construction, the provisions of the policy at issue are plain, unambiguous, and unequivocal.
The policy as a whole, appellant urges under its appeal question, is not ambiguous but clearly excludes completed operations from appellee's division 1 coverage as provided in the "Exclusions." In this connection, appellant states that item 3 of the declarations sets out that the insurance afforded is only with respect to such and so many of the listed coverages and divisions thereunder as are indicated by specific premium charges and that, from the premium charges, appellee did not buy coverage under Division 4-Products-Completed Operations wherein coverage for completed operations was available. The insured, on the other hand, insists that there exists an ambiguity and doubt with respect to interpretation, resolvable in his favor, as to whether the "Products-Completed Operations" clause in division 4 applies to "all operations" in the defining clause of division 1 under which he is insured.
Pondering these contentions, we reflect that the instrument before us is a manufacturers' and contractors' liability policy; appellee is an electrical contractor dispensing services and not a manufacturer of products. The action against him did not involve a claim for negligence in connection with products manufactured or sold by him, but it involved a claim for negligence in performance of services rendered by appellee as an electrical contractor. We are therefore not concerned with one making and selling products but with one who sells services.
Appellee is unequivocally and unqualifiedly covered in the opening paragraph of "Definition of Hazards" for "all operations" for which he paid coverage premiums. (Italics supplied.) The exclusionary clause excluding "the Products-Completed Operations Hazard" makes no reference to contractors who do not manufacture or otherwise deal in products. Rather, this is a single exclusion excusing the insurer from liability under division 1 for "the Products-Completed Operations Hazard." (Note the singular number of the word "Hazard" to which we have added emphasis.) The policy, in fact, contains no provision for completed operations divorced from products. Supportive of the concept that division 4 is a products liability coverage is the fact that (f) of the exclusions provides that the policy does not apply "under division 4 of the Definition of Hazards, to liability assumed by the insured under any contract or *882 agreement except a warranty of goods or products," (italics supplied); and the fact that in "Conditions," item 6, entitled "Limits of Liability," there is the provision that "Under division 4 of the Definition of Hazards all damages arising out of one lot of goods or products * * * shall be considered as arising out of one accident." (Italics supplied.) Thus, completed operations is tied in with products by a hyphen, by its adjunctive arrangement with products, by the reference utilizing the singular and not the plural number with respect to products-completed operations "Hazard," and by the division 4 condition adverting to goods or products as the subject treated under that division. The situation here, then, is one wherein, by the circumstances presented, the appellee insured did not make and sell or otherwise deal in products and had no need for protection against hazards connected with products. The products-completed operations hazard thus could appear not to bear any relation to services performed by him as an electrical contractor.
The policy before us is a complex instrument consisting of 6 pages, plus 3 rider or endorsement pages, most of it in small print, containing an array of many provisions. Realizing that an insurance company must be comprehensive in composition of a policy with all the various facets to be covered, this very fact makes it necessary that the instrument be clear, unambiguous, and unequivocal in all its terms. We do not find that the present policy accomplishes this, but, rather, we find it ambiguous with respect to the coverage which is the subject of this controversy, leaving the matter in doubt. As to reasons which we have given in arriving at this conclusion, we have selected for authority and support the recent cases of Maretti v. Midland National Insurance Company, 1963, 42 Ill. App.2d 17, 190 N.E.2d 597; Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp., 1961, 7 Cir., 292 F.2d 324; McNally v. American States Insurance Company, 1960, 6 Cir., 308 F.2d 438; Peerless Insurance Company v. Clough, 1963, 105 N.H. 76, 193 A.2d 444; and Nielson v. Travelers Indemnity Company, 1959, D.C., 174 F. Supp. 648, affirmed in Travelers Indem. Co. v. Nielson, 8 Cir., 1960, 277 F.2d 455.
Appellant concedes that there has been found no Florida case dealing with this question; but, stating that the closest is Haenal v. United States Fidelity & Guaranty Co., Fla. 1956, 88 So.2d 888, the insurer stresses and strongly relies upon it.
The Haenal case involved interpretation of a garage liability policy under the question of whether the insured's coverage comprehended loss by fire of a customer's automobile while in the insured's shop for repairs. The policy had four types of coverage, and the insured had purchased coverage under two of these. He contended that his loss was included under his coverage B hazard, entitled "Property Damage Liability" and defined in division 2 of the "Definition of Hazards" as arising out of the "ownership, maintenance or use of the premises for the purpose of an automobile repair shop * * * and all operations necessary or incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the Named Insured * * *." Under coverage D, "Property of Others in Charge of the Named Insured," not purchased by Haenal, the company was obligated to pay damages because of "injury to or destruction of property of others of a kind customarily left in charge of garages, including the loss of use thereof, caused by accidental collision or upset of such property while in charge of the Named Insured in connection with his * * * repair shop * * * operations." There were eight policy exclusions, within which the policy was said not to apply under Haenal's coverage B "to injury to or destruction of (1) property owned by or rented to the Insured, or (2) * * * property in charge of or transported by the Insured, * * *" and was said not to apply under coverage D "to injury or destruction caused directly or indirectly by fire * * *." The court *883 found that it had not been error for the lower court to have held that the policy did not cover loss by fire of the customer's car.
In the Haenal opinion, the court cited the Illinois case of Yadro v. United States Fidelity & Guaranty Co., 4 Ill. App.2d 477, 124 N.E.2d 370, wherein an insured was involved in a situation similar both as to facts and policy provisions. The insured in the Yadro case based his claim on a coverage B hazard identical with that of Haenal in division 1 of the "Definition of Hazards," and the policy contained also an identical coverage D and an identical exclusion clause as to coverage D. The exclusion clause as to coverage B, while not quoted verbatim in Yadro, appeared to have been the same as in Haenal. Although it was not shown in the Yadro opinion whether the policy there contained a division 2 hazard with respect to coverage B, relied on by Haenal, the court deemed the reasoning of the Illinois court to be equally applicable either to division 1 or division 2 of the coverage B hazards in the policy before it. Our supreme court quoted with approval from the Yadro case, including the following:
"Since the policy in this case contained a specific and limited coverage of liability arising out of damage to property of others left in charge of the insured for service, and excluded damage by fire therefrom, the trial court properly entered judgment for the defendant * * *." (Italics supplied.)
It is obvious that the Haenal case has no applicability here.
We think the cases from other jurisdictions which we have cited as authority and support for the views here expressed most effectively exemplify the considerations with which we are concerned, since the pertinent policy provisions in them are either identical to or essentially like those before this court.
The Maretti case, supra, 190 N.E.2d 597, like the Yadro case emphasized by our supreme court in Haenal v. United States Fidelity & Guaranty Co., which is relied upon by appellant here, is from the Illinois jurisdiction. Although the court in that case, like us, was considering for the first time in its jurisdiction the problem here involved, no recourse was had to the Yadro case, despite the fact that it was at hand, being a prior Illinois case. Rather, the court turned to cases from other jurisdictions as being applicable.
In the Maretti case, an action for declaratory judgment, the insured was an itinerant exhibitor of fireworks, and the negligence alleged was failure to remove live bombs from the display area, resulting in an accident after termination of the fireworks exhibition and in injury to a third person. In its opinion, the court clarified the nature of the question before it, set out views evinced by various other jurisdictions, and, construing the policy, arrived at its conclusion of affirmance of the circuit court's declaratory judgment for the insured, employing in part the following language, found at pages 600, 601 of 190 N.E.2d:
"It is argued by the insurance company that since coverage for such an accident as here occurred was afforded under the `Products  Completed Operations' division, it was thereby excluded from the coverage afforded under the `Premises  Operations' division pursuant to the `Exclusion' clause; that the insured did not pay for such coverage and hence, under Item 3 of the declarations, (which provides that the insurance afforded is only with respect to coverages and divisions as are indicated by specific premium charges) he is not entitled to be so covered. The question is whether these provisions curtail the general coverage granted by Division 1 for accidents arising from `All Operations.'"
The court next pointed out:
"* * * It has been held that where a contractor is engaged in activities *884 which do not involve the manufacture or sale of a product, the provisions of a comprehensive liability policy held by him relating to hazards arising from products are ambiguous and the policy should be construed to cover accidents arising from the insured's operations, whether the accident occurred before or after completion of the operation."[1]
Then, at page 602 of 190 N.E.2d, the court made its determination:
"We construe the policy as covering liability for all accidents arising from the insured's operations, whether the accident happened during or after the exhibition was completed."
Hoffman & Klemperer v. Ocean Accident & Guar. Corp., supra, 292 F.2d 324, involved negligence of an insured whose business was cleaning and tuckpointing of buildings. The district court, affirming declaratory judgment of the lower court in favor of the insured, found the insurer was obligated to defend Hoffman and to pay any judgment which might be rendered against him. The policy form before the court excluded "Products-Completed Operations" and contained no provision for "completed operations" divorced from "products." The court described the policy in some detail, setting out the division 1 "Premises Operations" and division 4 "Products-Completed Operations," the item 3 provision that the insurance afforded is only with respect to such coverages and divisions as are indicated by specific premium charges, the "all operations" definition for division 1, and the parts (1) and (2) defining language for division 4. At pages 328, 329 of 292 F.2d, the court explained:
"Ocean thus concludes that this protection was clearly and specifically excluded from the insurance purchased by Hoffman under division 1, quoted above. We cannot agree that the policy makes this clear. The policy, at best, is ambiguous."
The court continued:
"Hoffman, as indicated, is a contractor and sells no product. Hoffman therefore acquired such coverage as this policy afforded for contractors, including coverage for `all operations,' (which would cover tuckpointing) and for `premises' (which would include Mr. Williams' building located in the State of Illinois). The negligence with which Hoffman was charged was allegedly committed during the performance of the contract, and the injuries for which recovery is sought were allegedly the direct result of that negligence.
"Similar insurance policy provisions have been judicially construed. A number of courts have held that a contractor, who sells no product, is covered by the premises-operations hazard for injuries allegedly caused by its work without regard to when the injury occurs, provided tthat it occurs during the policy year, as the injury did in the case before us."
In the case of McNally v. American States Insurance Company, supra, 308 F.2d 438, the insureds were in the elevator inspecting and maintenance business, and the declaratory action was brought by the insurer, who sought judgment declaring that its coverage did not extend to include liability for injuries suffered by a passenger in an elevator fall at a time when none of the insured's employees were engaging in operations at the scene. After quoting the full style and context of Division 4, Products-Completed Operations under the definition of hazards, the appellate court said at page 441 of 308 F.2d:
"Defendant asserts that had the McNallys read the above, they would find that subsection (2) of Division 4 (which they didn't buy) describes, with more particularity than Division 1, (which they did buy) McNallys' liability *885 for accidents resulting from their failure to properly inspect or maintain the elevators and which accidents occurred in the intervals between their weekly visits to the Burdick Hotel.
"In the District Court, the main thrust of defendant's argument was that even though under `Division 1  Premises  Operations,' the McNallys were covered, this coverage was lost to them because they didn't buy the kind of coverage provided by `Division 4  Products  Completed Operations,' which division, in subsection (2), allegedly better described `the operations' for which the McNallys were sued. In this court, however, defendant places chief reliance on the Exclusions part of the policy. There it is provided (in small print):
"`This policy does not apply: * * (c) under division 1 of the Definition of Hazards to * * * or (2) the Products  Completed Operations Hazard.'
"In support of its claim of exclusion, defendant asserts that subsection (2) of Division 4, which division is entitled `Products  Completed Operations,' must be read so that the caption word `Products' in no way qualifies `Completed Operations' or subsection (2) which relates to completed operations; that subsection (2) of Division 4 must be read as being completely independent of the caption word `Products' * * *."
The district judge, said the court, construed the policy as meaning that division 4, Products-Completed Operations, in the context, should be read as providing products liability coverage, a coverage which was not applicable to the McNallys' business, with the result that its exclusion had no effect on the McNallys' coverage. The court, holding that the district judge committed no error in this finding, made the following statement at page 443 of 308 F.2d:
"We are not persuaded that the average businessman would be unreasonable or lacking in understanding in assuming that the caption phrase `Products  Completed Operations' related to the subject of products liability and that the subdivisions thereof were both germane to such subject. In any event, we are of the opinion that the District Judge was justified in finding ambiguity in the phrase and resolving it against the phrase's author."
The New Hampshire case of Peerless Insurance Company v. Clough, supra, 193 A.2d 444, involved an insurer's action for declaratory relief. This was a property damage liability case, with the suit against Clough, a contractor, charging negligence in his construction of fireplaces, with resultant damage to the property in question after the work had been completed. The contention was that the Products-Completed Operations exclusion related not only to products which were completed but also meant that no losses sustained after the insured had finished his contracting operations upon the property might be recovered. The court said at page 449 of 193 A.2d, "While the authorities are conflicting, other courts faced with situations comparable to that which confronts us here have concluded that the `Products  Completed Operations' exclusion does not apply in the case of an insured contractor." The court concluded that the exclusions relied upon by the insurer were inapplicable and that it was bound to defend the actions against Clough and to satisfy, within the policy limits, any judgments ordered.
In Nielson v. Travelers Indemnity Company, supra, 174 F. Supp. 648, a widely recognized case affirmed by and adopted on the appeal as the opinion of the appellate court, negligence had been alleged against the insured, a sewer contractor, for injuries resulting from an explosion caused by damage to a gas main after completion of the contractor's work. The court made an exhaustive analysis of the considerations connected with the provisions involved and, *886 citing and discussing many cases, found under the situation before it that the terms of the policy were ambiguous as to the matter of coverage of the insured contractor. The court stated at page 662 of 174 F. Supp.:
"The cases heretofore discussed indicate that where an independent contractor is engaged in an activity in which no products or materials are used and coverage for such activity is purportedly given as to hazards in connection therewith in the declarations portion of his comprehensive liability policy, and in the printed portion of the policy there is a products hazard provision which contains a subdivision relating to the matter of completed operations, the situation is one which may give rise to doubt and ambiguity on the question of coverage. In this case, as heretofore noted, it is the claim of the defendant that its liability for the loss in question is plainly and unambiguously excluded, and it is the contention of the plaintiff that liability for the loss in question is plainly and unambiguously covered. The Court is of the view that the situation is not as claimed either by the defendant or the plaintiff.
"The Court is of the view and finds under the circumstances in this case the terms of the policy are ambiguous as to the matter of coverage here involved and leaves that matter in doubt. Under the Iowa law such doubt and ambiguity are to be resolved in favor of the insured."
The time of the occurrence of an accident, within the meaning of a policy of liability, is generally deemed to be the time when the complaining party was actually damaged and not when the wrongful act was committed. Also generally, the accident or injury must occur during the time period of coverage; or stated otherwise, no liability exists if the accident or injury occurs outside the time period of coverage of a liability policy. Remmer v. Glens Falls Indemnity Co., 1956, 140 Cal. App.2d 84, 295 P.2d 19, 57 A.L.R.2d 1379; see also Annotation, pages 1387-1389; Hoffman & Klemperer Co. v. Ocean Accident & Guar. Corp., supra; and Peerless Insurance Company v. Clough, supra.
There is no contention that the accident did not happen within the time coverage of appellee's policy. The injury complained of transpired on July 11, 1959. The services that were rendered by appellee were on June 16, 24, and 25, 1959. Thus, the accident took place shortly after rendition of the services at a time when the work had been considered as completed. The policy period ran from January 1, 1959 to January 1, 1960. The policy provides under "Definition of Hazards":
"VI Policy Period, Territory
"This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."
We have perused a multitude of cases dealing with the subject at hand and find, under varying factual and policy-provisional situations, that in some cases conflicting views are expressed. Many of these we find to be either clearly distinguishable or not so definitively in point as are the cases to which we have turned for support and which we find to be better reasoned and more persuasive. We reiterate that in the policy before us we find ambiguity which clouds and renders it unclear. This ambiguity, under the particular facets of the policy in question, must be resolved against the insurer and in favor of the insured in order that the dominant purpose of the insurance shall be given effect. We sustain the trial court's determination.
Affirmed.
SHANNON, Acting C.J., and WHITE, J., concur.
NOTES
[1] Citation of cases omitted.