[No. 6237-6-III.    Division Three.    May 30, 1985.]

PROSSER COMMISSION COMPANY, INC., *Appellant,* v. GUARANTY NATIONAL INSURANCE COMPANY, ET AL, *Respondents,* DEAN CONARRO, ET AL, *Appellants.*

*David E. Williams* and *Critchlow & Williams,* for appellant Prosser Commission Co.

*Dennis Sweeney, George Fearing,* and *Leavy, Schultz & Sweeney,* for appellants Conarro.

*Bryan G. Evenson* and *Halverson, Applegate & McDonald,* for respondent Guaranty National Insurance Co.

*Norman R. Nashem, Jr.,* and *Nashem & Wagner,* for respondent Moore.

GREEN, C.J.—This is an appeal by Prosser Commission Company (Commission) and Dean, Ruth, Richard and Judy Conarro, intervenors, from a judgment that (1) Guaranty National Insurance Company, the Commission's insurer, had no duty to defend the Commission and is not liable for damages arising from the sale of a cow infected with brucellosis; and (2) neither Guaranty nor Francis Moore, the Commission's insurance broker, is liable for Moore's failure

to procure adequate coverage. The dispositive issue is whether the court was correct when it ruled there is no coverage for this occurrence because of an exclusionary clause in Guaranty's policy relating to products and completed operations hazards. We reverse.

The Prosser Commission is a family corporation formed by Bruce and Barbara Brahs in 1969 for the purpose of operating a livestock auction business in Prosser. Mr. Brahs solicited cattle ranchers to sell their cattle at the auction on consignment. The proceeds were remitted to the ranchers less commission and charges for branding and health inspections. The Brahs occasionally purchased cattle which they sold at the auction.

The Commission was required by state and federal law to have a veterinarian present at the auctions, who inspected cattle for brucellosis—Bang's disease. In January 1978, the Commission purchased a cow in Oregon for its own account and sold it at the auction without inspection. The cow was infected with brucellosis. The purchasers, Larry and Shirla Whitby, allowed the cow to intermingle with their existing herd, thereby contaminating it. As a consequence, the herd had to be destroyed.

In March 1979, the Whitbys sued the Brahs and the Commission to recover their damages. The Brahs and the Commission had liability insurance with Guaranty National Insurance Company. Guaranty initially assumed the defense of the action subject to a reservation of their rights to assert policy defenses; however, it later withdrew from its defense on the basis the incident was excluded by the products and completed operations hazard exclusion in their policy. The Whitbys' action resulted in a judgment against the Brahs and the Commission for $57,008, statutory attorney fees and costs.

Some of the Whitbys' grazing land was shared by the Conarros. Their cattle became infected and they filed suit against the Commission and the Brahs. Guaranty also refused to defend that action. Based on the Whitbys' judgment, the Conarros obtained summary judgment establish-

ing liability against the Commission and the Brahs, reserving for trial the question of causation and damages.

On April 26, 1982, the Commission brought this action against Guaranty alleging Guaranty violated its duty to defend or pay the Whitby judgment. It also sued Francis Moore, its insurance broker, for failing to obtain adequate insurance protection. The Conarros intervened, alleging insurance coverage exists for their probable damages. The court entered a judgment of dismissal against the Commission and the Conarros, who both appeal.

The court determined there is no coverage under Guaranty's policy because of the following exclusion:

Exclusions
This insurance does not apply:
. . .

(p) to bodily injury or property damage included within the *completed operations hazard* or the *products* hazard;

(Italics ours.) These terms are defined in the policy as follows:

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, . . .
. . .

"named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name including any container thereof other than a vehicle, but "named insured's products" shall not include a vending machine or any property other than such container rented to or located for use of others but not sold.
. . .

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto . . .

The Commission contends the products and completed operations exclusion does not apply to its business. It argues auctioneering cattle is not the same as the sale of a

"product" which, in the ordinary sense of the word, implies some form of processing before sale. It further maintains the occurrence for which coverage is sought was not the inadequate manufacture or processing of a product, but from negligence in failing to perform the service of having the cow inspected. Guaranty maintains the court was correct in applying the exclusion here because the Whitbys' and Conarros' damages arose from the sale, handling or distribution of a good or product as defined in Washington's Uniform Commercial Code (UCC), RCW 62A.2–105(1).[1]

No cases have been cited dealing with precisely these facts. Nor is Guaranty's reference to the UCC helpful; insurance contracts are defined not according to definitions established by legal scholars, but according to the interpretations that would be given by the average person purchasing insurance. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509 (1983). The rationale behind this rule is that "insurance policies are prepared by experts in this complex area, and the intricate interplay of their various provisions is difficult for a layman to understand."[2] *New Amsterdam Cas. Co. v. Addison*, 169 So. 2d 877, 881 (Fla. Dist. Ct. App. 1964). Hence, the question is whether an average businessman would understand that, by virtue of the products and completed operations exclusion, there is no coverage for the incident here.

In answering that question, we are guided by well established principles of construction in insurance law:

---

[1]RCW 62A.2–105(1) provides:

"'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (RCW 62A.2–107)."

[2]This is particularly apt here; the exclusion is boiler plate and Mr. Brahs, who had requested full liability coverage, had been educated up to the fifth grade and could not read.

There are certain basic principles that apply in any examination of exclusionary clauses in insurance contracts. Chief among these is that exclusionary clauses are to be most strictly construed against the insurer. *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 4 Wn. App. 221, 480 P.2d 537 (1971); *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 472 P.2d 611 (1970). The policy should be interpreted in accordance with the way it would be understood by the average person purchasing insurance. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940). It must not be forgotten that the purpose of insurance is to insure, and that construction should be taken which will render the contract operative, rather than inoperative. *Scales v. Skagit Cy. Med. Bur.*, 6 Wn. App. 68, 491 P.2d 1338 (1971). A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed to be unintended by the parties. *Nautilus, Inc. v. Transamerica Title Ins. Co.*, 13 Wn. App. 345, 534 P.2d 1388 (1975).

. . .

"Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import. An insurer may, of course, cut off liability under its policy with a clear language, but it cannot do so with that dulled by ambiguity. As with the provisions of the policy as a whole, so also with the exceptions to the liability of the insured, the language must be construed so as to give the insured the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in his favor."

. . .

. . .

"Where exceptions, qualifications or exemptions are introduced into an insurance contract, *a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof.*"

. . .

. . .

Where there is such an ambiguity in an exclusion, that meaning which excludes the least is necessarily the most liberal construction for the insured.

*Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, supra at 68–

69. Applying these rules, we find the Commission's position to be reasonable that the exclusion does not clearly exclude insurance protection for the circumstances presented.

■ The completed operations hazard or products hazard exclusion is commonly referred to as the products liability exclusion and understood to apply to specialized circumstances of loss caused by the use of goods or products manufactured or produced. Annot., 54 A.L.R.2d 518 (1957); Annot., 45 A.L.R.2d 994 (1956); *Insurance Co. of North Am. v. Electronic Purification Co.*, 67 Cal. 2d 679, 433 P.2d 174, 63 Cal. Rptr. 382 (1967); *Peerless Ins. Co. v. Clough*, 105 N.H. 76, 193 A.2d 444 (1963). The terms goods or products manufactured, sold, handled or distributed in the clause defining the insured's products, when read together, imply goods which are processed or assembled in the ordinary channels of commerce. *Aetna Ins. Co. v. Stevens*, 229 So. 2d 601 (Fla. Dist. Ct. App. 1969); *Kammeyer v. Concordia Tel. Co.*, 446 S.W.2d 486 (Mo. Ct. App. 1969); *Kirchner v. Hartford Accident & Indem. Co.*, 440 S.W.2d 751 (Mo. Ct. App. 1969); *Peerless Ins. Co. v. Clough, supra; Friestad v. Travelers Indem. Co.*, 260 Pa. Super. 178, 393 A.2d 1212 (1978). Further, the products hazard exclusion does not apply where the insured's business primarily involves a service. *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982); *St. Paul Fire & Marine Ins. Co. v. Coleman*, 316 F.2d 77 (8th Cir. 1963); *Farm Bur. Mut. Ins. Co. v. Lyon*, 258 Ark. 802, 528 S.W.2d 932 (1975); *Aetna Cas. & Sur. Co. v. Richmond*, 76 Cal. App. 3d 645, 143 Cal. Rptr. 75 (1977); *American Ins. Co. v. Hartford Accident & Indem. Co.*, 198 So. 2d 757 (La. Ct. App. 1966); *Kirchner v. Hartford Accident & Indem. Co., supra; Fred Steinheider & Sons, Inc. v. Iowa Kemper Ins. Co.*, 204 Neb. 156, 281 N.W.2d 539 (1979); *Peerless Ins. Co. v. Clough, supra; McAllister v. Century Indem. Co.*, 24 N.J. Super. 289, 94 A.2d 345 (1953); *Gordon Yates Bldg. Supplies, Inc. v. Fidelity & Cas. Co.*, 543 S.W.2d 709 (Tex. Civ. App. 1976); 12 G. Couch, *Insurance* § 44A:60 (2d rev. ed. 1981).

Here, the Commission was not involved in manufacturing a product or handling the product in its route through commerce as these terms are typically understood. It instead provided a service of bringing buyers and sellers of cattle together and to consummate a sale. The Commission arranged for liability insurance to protect it from claims arising from the performance of that activity. Since the Commission was required by state and federal law to inspect the cattle prior to the sale, it would not be unusual to expect the liability insurance to cover negligence concerning that service.[3] Under these circumstances, an ordinary businessman would not anticipate that a products liability exclusion would exclude coverage for what occurred here.

Guaranty contends even if the brucellosis testing were a service and not a product sale, it is therefore, at the very least, a completed operation which would be independently excluded under the completed operations hazard exclusion. Since the policy does not specifically define operations, Guaranty asserts the dictionary definition should be used which includes "a doing or performing, especially of an action, work, deed. . . . 'a phase of a business or of a business activity.'" Brief of Respondent, at 14.

"Completed operations hazard", however, is contained within the same exclusion as products hazard. By reason of its location, an average businessman would reasonably assume it relates to the same subject, *i.e.,* workmanship on manufactured products. *Insurance Co. of North Am. v. Electronic Purification Co.,* 433 P.2d at 179; *New Amsterdam Cas. Co. v. Addison, supra; Peerless Ins. Co. v. Clough, supra;* G. Couch at § 44A:58.

Moreover, if the completed operations hazard exclusion is read as urged by Guaranty, it would eliminate a broad area

---

[3]In fact, Mr. Brahs specifically requested full coverage for liability. The trial court found that no policy offers full coverage and is without exclusions. However, the exclusions which do not apply to the Commission's business operations are irrelevant and it requested coverage against the ones that do apply.

of coverage, *i.e.*, "every phase of business" or "business activity." We decline to assume a reasonably intelligent businessman would seek broad liability protection and yet intend to so severely limit his protection, unless the insurance contract clearly expresses such intention. Had the company intended to exclude the occurrence here, it could have done so. Since it did not, it is included within the coverage.

As to Mr. Moore, the Commission contends the court erred in determining he was neither an apparent agent for Guaranty nor liable for failure to procure coverage for this incident. While our determination of coverage disposes of the contention that Mr. Moore did not obtain coverage and supports the trial court's dismissal of the cause of action against Mr. Moore, the decision was also correct based on the finding no agency existed between Guaranty and Mr. Moore. Generally, an insurance broker is the agent of the insured. *McCann v. Reeder*, 178 Wash. 126, 34 P.2d 461 (1934); *Hardcastle v. Greenwood Sav. & Loan Ass'n*, 9 Wn. App. 884, 516 P.2d 228 (1973). Whether the broker is also the agent of the insurer is a question of fact and depends upon what he is doing and for whom when liability arises. 3 G. Couch, *Insurance* § 25:94, at 447–48 (2d rev. ed. 1984). Additionally, there must be some evidence or fact from which a fair inference of authorization by the insurer may be deduced in order to make the broker the agent of the insurance company. G. Couch, at 458. Here, the record supports the conclusion Mr. Moore was not authorized to act as Guaranty's agent.

Reversed in part; affirmed in part.

MUNSON and THOMPSON, JJ., concur.

After modification, further reconsideration denied July 17, 1985.

Review denied by Supreme Court September 20, 1985.