**CITY OF PORTSMOUTH**

v.

**COLONIAL PENN INSURANCE COMPANY.**

**Civ. No. 88–483–S.**

United States District Court,
D. New Hampshire.

Oct. 12, 1990.

---

Sharon A. Cuddy, Portsmouth, N.H., for plaintiff.

Gregory A. Holmes, Manchester, N.H., for defendant.

## ORDER

STAHL, District Judge.

Three present and former City of Portsmouth police officers have sued the City of Portsmouth, contending that a personnel policy adopted by the Portsmouth Police Commissioners contravened state and federal law. The policy prohibited police officers from engaging in active service in the National Guard and the armed forces reserves. In this action, the City of Portsmouth asks the Court to declare that Colonial Penn Insurance Company is obligated to provide a defense to and coverage for the claims of two of the plaintiffs in the underlying lawsuit.[1] By stipulation, the parties agree that Colonial Penn policy does not apply to the third plaintiff.

Currently before the Court are (1) the parties' cross-motions for summary judgment, and (2) the parties' joint motion to be relieved of filing pretrial materials.

## BACKGROUND

The parties stipulate that the policy (which was in effect between July 1, 1984 and July 9, 1985) only can apply to the claims of underlying plaintiffs James Prendergast and John Centola. Prendergast began his employment with the Portsmouth Police Department on March 12, 1977, and worked at that job continuously until April 8, 1988. Centola joined the force on November 18, 1978 and remains a full-time officer.

Prendergast first expressed an interest in joining the National Guard in 1977, but was prohibited from doing so because of the department's personnel policy. He reaffirmed this interest at undetermined times throughout the term of his employment.

Centola first inquired about joining either the reserves or the National Guard while enrolled at the New Hampshire Police Academy in 1978–79. He too was told that department policy prohibited such membership. Centola also reaffirmed his interest in joining the reserves throughout his period of employment, and, at some time during the years 1984 and 1985, specifically requested that the policy be altered.

The parties also stipulate that the prohibition on reserve and National Guard enlistment originally stemmed from a 1954 Board of Police Commissioners Regulation which prohibited outside employment.[2] In

---

1. This action is brought under authority of the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Jurisdiction is founded on 28 U.S.C. § 1332.

2. The 1954 regulation reads:
   "Officers shall devote their whole time and attention to the business of the department, and they are expressly prohibited from fol-

1978, the Board revised the Rules and Regulations to read as follows:

"Extra-departmental activity or employment-members are prohibited from following any other calling or engaging in any other business during the time when they are not physically on duty, except with permission from the Board of Commissioners."

This provision, which superseded the 1954 regulation, was the City's basis for denying the requests of Officers Prendergast and Centola to join either the National Guard or the armed forces reserves after 1978.

## DISCUSSION

The City contends that Colonial Penn is obligated to provide coverage under the "negligent act, error or omission" provision of the policy that was in effect between July 1, 1984, and July 9, 1985. Colonial Penn denies coverage, arguing that (1) the acts challenged in the underlying suit did not occur within the policy period, and (2) the language of the policy clearly excluded coverage for the acts challenged in the officers' complaint. Because, as explained below, the Court agrees with Colonial Penn that the acts underlying the officers' claim occurred outside the period of coverage, the Court finds it unnecessary to resolve the dispute over the meaning of the phrase "negligent act, error or omission."

The parties stipulate that any coverage for the underlying action would arise from the policy's "Errors or Omissions" coverage spelled out in Endorsement Number 2. The Endorsement reads:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay on account of any claim for breach of duty made against the insured by reason of any negligent act, error or omission of the insured if such negligent act, error or

omission is committed during the policy period and discovered during the policy period or within twenty-four months after termination of the policy.

At issue then is whether the City's prohibition was "committed during the policy period." The challenged prohibition has been in effect since at least 1977. It appears that the officers made their requests a number of times between 1977 and 1985. The City bought insurance from Colonial Penn to guard against "any negligent act, error or omission" occurring between July 1984 and July 1985. Even assuming that the acts complained of in the underlying action constituted "negligent act, error or omission," the Court finds that the acts giving rise to plaintiff's claims occurred outside the period of coverage identified in the policy.

The 3rd Circuit Court of Appeals was faced with a strikingly similar issue in *Appalachian Ins. Co. v. Liberty Mutual Ins. Co.*, 676 F.2d 56 (3rd Cir.1982). In 1965, Liberty Mutual had adopted certain employment policies which applied to female employees in its claims department. In May 1971, several female employees filed charges before the Equal Employment Opportunity Commission alleging that these policies were discriminatory. After satisfying certain administrative prerequisites, these employees filed a class action in February 1972. The action was settled in 1978. As part of the settlement, workers employed before August 1, 1971 were compensated for injuries allegedly sustained both before and after that date.

Appalachian had issued a liability policy to Liberty Mutual for the policy term of August 1, 1971 to August 1, 1974. Liberty Mutual sought indemnification for the settlement under that policy.[3]

---

lowing any other calling or being employed in any other business. Although certain hours are allotted to the respective members for the performance of duty on ordinary occasions, yet at all times, when notified, they must be prepared to act immediately, and the same responsibility as to the detection and prevention of crime and the preservation of order

rest upon them when not in uniform, or off duty, as when on duty in uniform."

3. In its attempts to distinguish *Liberty Mutual*, plaintiff argues that since Liberty Mutual was insured under an "occurrence" policy and not a "negligent act, error or omission" policy, the 3rd Circuit's reasoning is inapplicable. The Court disagrees. "An 'occurrence' policy protects the policyholder from liability for any act done

In determining the coverage issue, the court in *Liberty Mutual* had to determine (1) whether there was a single occurrence or multiple occurrences for which Liberty sought indemnification, and (2) when the occurrence or occurrences took place.

The court found that there was one occurrence for purposes of policy coverage. Applying the general rule that an occurrence is determined by the cause or causes of the resulting injury, it stated:

> The injuries for which Liberty was liable all resulted from a common source: Liberty's discriminatory employment policies. Therefore, the single occurrence, for purposes of policy coverage, should be defined as Liberty's adoption of its discriminatory employment policies in 1965.
>
> The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. As long as the injuries stem from one proximate cause there is a single occurrence.

*Id.* at 61 (citation omitted).

This view finds further authoritative support. In *Bartholomew v. Ins. Co. of North America*, 502 F.Supp. 246 (D.R.I.1980), *aff'd sub nom. Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir.1981), the court found that an equipment supplier's business liability insurer was not liable for losses to car wash operators arising from defects in equipment supplied and sued upon before the policy took effect. In holding that an occurrence took place before the policy term despite the fact that there was additional injury within the poli-

cy term, the court asked if "there was but one proximate, uninterrupted, and continuing cause which resulted in all the injuries and damage. If so, there has been but one occurrence, even though several discrete items of damage resulted." *Id.* at 251 (citations omitted).

The Court finds the reasoning in the above cases appropriate to the instant matter. The act of denying Officers Prendergast and Centola permission to join either the reserves or the National Guard stems from one proximate, uninterrupted and continuing cause: the 1954 regulations as revised in 1978. As such, it is a single act despite the ongoing nature of the damages alleged to have arisen therefrom.

The Court now must consider when the act took place. New Hampshire law is clear on this point. "[T]he time of the occurrence resulting in the loss or damage, and not the time of the negligence, determines whether there is coverage under the policy." *Peerless Insurance Co. v. Clough*, 105 N.H. 76, 78, 193 A.2d 444 (1963). Following the reasoning in *Liberty Mutual*[4] and *Bartholomew* and applying the rule in *Clough*, the Court holds that the act took place when the alleged injuries accrued. A contrary result would contravene the rule that an insured cannot insure against something which has already begun. *Liberty Mutual*, at 63 (*citing Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27, 29 (1st Cir.1981)).

Officer Prendergast first expressed an interest in joining the National Guard in 1977 and was denied permission at that time. Officer Centola asked about joining either the National Guard or the reserves

---

while the policy is in effect...." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2926 n. 3, 57 L.Ed.2d 932 (1978). In the instant case, the policy in issue covered any act, error or omission "committed during the policy period". Thus, despite semantic differences, the effects of the policies are indistinguishable in this regard.

4. Plaintiff, citing no authority of its own, also attempts to distinguish *Liberty Mutual* on the basis that, unlike the instant case, the insured had knowledge of the risk resulting from the 1971 filing of an EEOC claim. However, plain-

tiff in the instant case also had knowledge that its enlistment prohibition policy was questionable. The police department was asked continually to review this policy. In addition, a study of the policy by the former chief of police revealed to him that few other police departments had similar policies. Though his examination undoubtedly led to a good faith determination that the policy was legal, the fact that there was an examination leads the Court to conclude that the plaintiff knew, or should have known, that the policy was, at some level, questionable. (*See* affidavit of Raymond W. Labrie).

while at the police academy sometime in 1978–79. It was at these times that their alleged injuries accrued. Under these facts therefore, the acts for which the city seeks coverage occurred before July 1, 1984, the effective starting date of the Colonial Penn policy.

### CONCLUSION

The function of summary judgment is to cut through the formal allegations of acts in the pleadings and determine whether a trial is necessary. *See Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); Rule 56, Fed.R.Civ.P. Advisory Committee's note to 1963 amendment. The burden is on the moving party to establish the lack of a genuine, material, factual issue, *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986), and the Court must view the record in light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). However, once the movant has made a properly supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1985) (citing Rule 56(e), Fed.R.Civ.P.). In this Court's opinion, defendant has met its burden.

Accordingly, plaintiff's motion for summary judgment (document no. 10) is denied. Defendant's motion for summary judgment (document no. 11) and the parties' joint motion to be relieved of filing pre-trial materials (document no. 12) are granted.

SO ORDERED.