Felix CLAUSS, Jr., Thomas F. Clauss and
Anna M. Clauss, t/a Felix Clauss
and Sons

v.

AMERICAN AUTOMOBILE AND IN-
SURANCE COMPANY.

Civ. A. No. 26076.

United States District Court
E. D. Pennsylvania.

Aug. 14, 1959.

As amended Aug. 18, 1959.

Henry J. Morgan, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., for plaintiffs.

Thomas Raeburn White, Jr., White & Williams, Philadelphia, Pa., for defendant.

EGAN, District Judge.

This is an action brought under the Declaratory Judgment Act (28 U.S.C.A. § 2201) to determine the questions of coverage and the duty to defend under two comprehensive liability policies. It is necessary to relate the factual background of this case to intelligently comprehend the two basic issues involved. There is diversity of citizenship and the

required jurisdictional amount is indicated.

The plaintiffs, during the year 1957, were engaged in the construction of certain sewers and other work on Roosevelt Boulevard, Philadelphia, pursuant to a contract with the City of Philadelphia. The sewer project was completed on October 18, 1957 and a final inspection was made by the City engineers on October 20, 1957. Final payment for the project was received on March 11, 1958.

On or about June 30, 1958 a suit was instituted by Paul Rumer against the City of Philadelphia, seeking damages for personal injuries he sustained in an accident which occurred on February 1, 1958 when a tractor-trailer which he was operating was forced out of control into a tree by reason of an alleged defective condition in Roosevelt Boulevard. Thereafter the City filed a third-party complaint against the plaintiffs herein, as additional defendants in that action, and alleged as follows:

"2. The defendant, City of Philadelphia, has joined Thomas F. Clauss, Felix H. Clauss, Jr., and Anna M. Clauss, Thomas F. Clauss, and Felix H. Clauss, Jr., Executors of the Estate of Felix H. Clauss, also known as Felix H. Clause, Sr., individually and trading as Felix Clauss and Sons, as additional defendants and avers that the said additional defendants negligently cause, allowed and permitted the hazardous, unsafe and dangerous condition complained of by the plaintiff, to exist."

The third-party complaint was forwarded to the defendant, American Automobile and Insurance Company, Felix Clauss and Sons' insurer, which raised a question of coverage under the policy. After the plaintiffs executed a document entitled "Agreement to Defend," the defendant undertook the defense of the action in the Court of Common Pleas. However, the defendant, on December 3, 1958, advised the plaintiffs that it would no longer continue the defense of that action and that it was directing its attorney to withdraw his appearance in said action. On February 13, 1959, the Court of Common Pleas granted leave to defendant's attorney to withdraw his appearance. Since that Court did not pass on the question of coverage and defense, this present action was instituted to declare the rights and liabilities of the parties under two policies.

■ At the outset, the question relating to policy No. K–213 4758 can be disposed of very quickly. This policy ran from November 1, 1956 until November 1, 1957. Under "Insuring Agreements" IV, it states:

"Policy Period, Territory—This policy * * * applies only to accidents or occurrences which take place during the policy period * * *"

Since the suit in the Court of Common Pleas arises out of an accident which occurred on February 1, 1958, it is obviously beyond the policy period.

■ The second policy, No. K–215 0621, was in effect at the date of the accident and this opinion will deal with the question of coverage and the duty to defend under it.

The two issues must be treated separately since the question of coverage involves an interpretation of the policy and the determination of duty to defend requires reading the complaint filed by the City of Philadelphia, together with the policy.

In answers to interrogatories, plaintiffs have admitted completion of the sewer construction project by October 18, 1957, well before the date of the accident in question. Therefore the Insurance Company denies coverage on the ground that the accident arose out of a completed operation and that the policy clearly provides no coverage in this situation. Plaintiffs allege that the policy is ambiguous. By following the general rule of construing the policy in its favor in case of such ambiguity, the clause in the policy "Sewer Construction—All Operations," would include coverage for a completed operation.

However, before going on to answer the various arguments adduced, it would

be well to set forth some of the pertinent language of the policy relating to coverage.

On page 1, under "Insuring Agreements" it states the general coverage provisions:

"I. Coverages: * * *

B—Bodily Injury Liability—Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person."

However, on a separate page, the coverage becomes more specific and reads as follows:

"Declarations General Liability Schedule

| Description of Hazard | Estimated Premiums | |
|---|---|---|
| | Coverage B | Coverage D |
| (a)  Premises—Operations | | |
| As per schedule attached | 1173.78 | 939.66 |
| (b)  Elevators | | |
| No exposure at inception of policy | | |
| (c)  Independent Contractors | | |
| Construction Operations—Contractor | | |
| (not railroads) excluding operations on board ships | 74.00 | 32.80 |
| (d)  Products (including completed operations) | | |
| Not covered hereunder | | |

The attached Schedule A, covering "Premises—Operations", then states:

"Description of Hazards

"Excavation—for Cellars or Foundations of buildings, bridges or retaining walls including borrowing, filling or backfilling (excavation in connection with street or road construction or tunneling to be separately rated)

"Sewer construction—all operations— (Tunneling other than at street crossings to be separately rated)

"Clerical office employees—NOC

"Salesmen, collectors or messengers outside."

There is also a separate endorsement which excludes coverage for "Products Hazard" which provides:

"(f) Products Hazard. The term 'products hazard' means: * * *

(2) operations, if the accident or occurrence takes place after such operations have been completed or abandoned and takes place away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division

(a) of the declarations specifically includes completed operations."

This, of course, is the section that the defendant is relying on since an accident arising out of a completed operation would not be covered by virtue of this section when such a hazard is specifically excluded. However, plaintiffs argue that by referring to (d) of the definition of "Products Hazard," we are then referred to (a) of the declaration where we find "Sewer Construction—All Operations" and that the words "all operations" include completed operations. By adopting this definition, we would be out of the "Products Hazard" exclusion.

However, the Court finds no such ambiguity as indicated by plaintiffs and to adopt their definition would be to strain the language of the policy beyond its obvious intended coverage. An examination of the "General Liability Schedule" indicates that there are different classifications of risks and hazards. "Premises—Operations" hazard is listed separate and apart from "Products (including completed) Operations" which indicates a difference between operations and completed operations and the fact that they are to be rated and paid for separately. A further indication is found on the attached Schedule relating to "Premises—Operations," which shows that the term "All Operations" refers to the activities and actual work of the contractor in relation to a certain project and does not include completed operations.

The classification in (a) "Sewer Construction—All Operations" would not comply with proviso (d) in the "Products Hazard" definition which states, " * * * operations for which the classification stated in division (a) of the declarations specifically includes completed operations," since the declaration (a) does not include a completed operation. The term "All Operations" would not be equivalent to completed operations in light of what was stated above to be the obvious difference between an operation and a completed operation. Since this policy is so specific in its ex-

clusion of the "Products Hazard," any language that would avoid this exclusion should be equally specific, as stated in proviso (d), and the term "All Operations" would not satisfy that necessity especially in light of the paragraph where that term is found. Therefore, we find that this policy does not cover the accident in question since it arose out of a completed operation.

■ Coming to the issue of the duty to defend, we are met with an altogether different problem. The policy provides: "With respect to such insurance as is afforded by this policy the Company shall: (a) defend (1) any suit against the insured alleging such injuries, sickness, disease or destruction and seeking damages on account thereof even if such suit is groundless, false or fraudulent . . . .'".

The defendant argues that if there is no coverage, it therefore follows that there is no duty to defend. However, the law in Pennsylvania, as expressed in the recent decision of the Pennsylvania Supreme Court in Cadwallader v. New Amsterdam Casualty Company, Pa., 152 A. 2d 484, is not to that effect. See also Wilson v. Maryland Casualty Co., 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449. These cases rely heavily upon the leading case of Lee v. Aetna Casualty & Surety Company, 2 Cir., 1949, 178 F.2d 750, 751. This case is analogous to our situation by reason of the fact that although the Court held that there was no coverage under the policy, the insurance company was obliged to defend. The Court, speaking through Judge Learned Hand, stated:

> "This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered'."

The Court went on to state, "It was the duty of the defendant to undertake the defence until it could confine the claim to a recovery that the policy did not cover."

Therefore we must turn to the complaint to see if it states a claim, qua claim, which is covered by the policy and which the insurer is under a duty to defend. The complaint of the City alleges that, "said additional defendants negligently cause, allowed and permitted the hazardous condition complained of by the plaintiff to exist." By the use of the words "allowed and permitted", it would seem that the City is alleging that plaintiffs herein were still in control of the premises at the time of the occurrence. Since the "Products Hazard" exclusion relates only to operations not in control of a party, there would be coverage for a situation in which the party was still in control. Therefore the defendant is under a duty to defend until it can confine the claim of the City to a recovery not within the coverage of the policy.

Counsel will submit an appropriate form of Order.