274 F.Supp. 980 (1967)
Lee Alan MILLER and Lois Magnuson Miller, Plaintiffs,
v.
LINDGATE DEVELOPERS, INC., Defendant,
Home Indemnity Company, Garnishee.
No. 66 C 273(2).
United States District Court E. D. Missouri, E. D.
September 22, 1967.
*981 Murphy & Roche, St. Louis, Mo., for plaintiffs.
Evans & Dixon, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This case has been submitted to this Court on final hearing heretofore had and briefs subsequently filed.
The action presently pending before the Court arises out of a judgment rendered in the Circuit Court of St. Louis, Missouri, in favor of plaintiffs and against defendants Lindgate Developers, Inc., (hereinafter referred to as "Lindgate"), and Lindgate's insurer, Home Indemnity Company (hereinafter referred to as "insurer") in the amount of $17,000. After the judgment was entered, Lindgate paid plaintiffs $3,700 thereon, leaving an unpaid judgment balance of $13,300. In an attempt to collect this balance, plaintiffs filed a garnishment against Lindgate's insurer, Home Indemnity Company, which is a New York corporation, with its principal place of business in New York City. Insurer timely filed a petition for removal to this Court, which has jurisdiction under 28 U.S.C. §§ 1441 and 1332.
The underlying facts in this case are not disputed. Garnishee is an insurance company. Lindgate is a land developer, that is, in the business of subdividing land and constructing residential homes thereon.
On August 3, 1961, Lindgate sold and delivered to plaintiffs a residence in St. Louis County which Lindgate had built. After plaintiffs took possession of the property, the building began to deteriorate. The outside walls and foundation began to crack, and although plaintiffs reported the damage to Lindgate, the developer did nothing to repair the structure or arrest deterioration. In May 1964, plaintiffs retained a civil engineer to inspect the premises and report the cause of the damage. The inspection revealed that the damage was caused by Lindgate's improper placement of footings and improper installation of the roof. Plaintiffs thereon filed suit against Lindgate.
At the time the home was sold to plaintiffs, Lindgate was covered by a *982 comprehensive general liability policy issued by insurer. The policy included an "operations" clause, of which Lindgate's officers and employees were unaware until the possibility that the clause provided coverage for the damages suffered by plaintiffs was pointed out to Lindgate by its attorney. The attorney immediately notified insurer's agent of the pendency of the claim and made demand upon insurer to take over the defense of plaintiffs' suit. Insurer declined, and plaintiffs proceeded to judgment against Lindgate. Judgment was rendered for plaintiffs in the amount of $17,000, of which Lindgate paid $3,700, leaving an unsatisfied judgment balance of $13,300, for which plaintiffs bring action against Lindgate's insurer, by way of garnishment.
The briefs of the parties indicate agreement that the relevant provisions of the insurance policy in force during the relevant period are as follows:
"INSURING AGREEMENTS
"I.
"Coverage BProperty Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."
"EXCLUSIONS
"This policy does not apply:
"(h) under coverage B, to injury to or destruction of * * * (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises;"
"CONDITIONS
"3. Definitions:
(c) Products Hazard. The term "products hazard" means
(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
"(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations.
"8. Notice of Accident: When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice * * *

*983 "9. Notice of Claim or Suit: If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
"11. Action Against Company: No action * * *
"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. * * *"
There is no dispute that the sum sought is within the monetary limits of the policy.
Clause 11 gives these plaintiffs standing to sue the insurer in the circumstances of this case. The insurance contract was purchased through a Missouri agent of the garnishee, executed in Missouri, and covered Missouri property and Missouri residents. Therefore, Missouri law properly governs the interpretation of its provisions. Under Missouri law, an insurer will not be relieved from liability under a policy because of delay of the insured in giving notice of an accident or suit unless the insurer proves that failure to give such timely notice results in prejudice to the insurer. Hawkeye-Security Ins. Co. v. Davis, 277 F.2d 765 (8th Cir. 1960); Powell v. Home Indemnity Co., 343 F.2d 856 (8th Cir. 1965).
Plaintiffs say that the insured did not at first realize that it had the operations coverage, but that when its attorney pointed this out, the insurer was informed immediately and demand was made upon the insurer to take over defense of the suit. The insured offered to make all documents and files related to the case available to its insurer, but insurer refused to take over defense of the suit. Plaintiffs allege that had insurer taken over defense of the suit, the delay in giving notice would not have had any prejudicial or adverse effects on the case. Insurer does not allege, or prove, that the delay in notice had any prejudicial effects on the case. Insurer therefore is not relieved of liability under the policy because of insured's failure to conform to the provisions of clauses 8 and 9.
Plaintiffs' suggestion that the facts described constitute an "accident" within the meaning of Coverage B is not disputed by insurer. The question of what constitutes "accident" in this context is discussed at length in St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361 (8th Cir. 1966), and the reasoning in that case indicates that the facts in this case constitute circumstances properly within the meaning of the word "accident" as it is used in the policy.
All parties agree that clause (3) (c) (2), which describes "operations" as "any act or omission in connection with operations performed * * * if the accident occurs after such operations have been completed * * * provided, operations should not be deemed incomplete because improperly or defectively performed" contemplates liability insurance coverage for the accident complained of unless excluded by Exclusion (h) (4), which provides that Coverage B does not apply to "work completed by or for the named insured, out of which the accident arises." Plaintiffs argue that because the language of the exclusion, when applied to paragraph (3) (c) (2), gives rise to ambiguity, the issue should be resolved in favor of plaintiffs, as it is well established that any ambiguities in an insurance contract must be resolved against the insurer and in favor of the insured. Insurer argues that (1) its insured is provided with protection from liability for damages caused by insured's product or operations, but that the exclusion limits this coverage to property of others, and that (2) the insured is never relieved of the responsibility of standing behind his own work product.
When the improper construction work which caused the damage was done, the property was in control of the insured; when the damages occurred, the *984 property was no longer in the possession or control of the insured. Therefore, the key issue for the first point made by insurer is when did the "accident" occur? The St. Paul case, supra, discussed this question. In that case, the Northern Grain Company, a corporation engaged in the business of buying, selling and storing grain, was sued by a group of farmers who had bought seed wheat, purportedy of the Selkirk variety, from Northern. The seed was, in fact, Conley, a less productive variety, but this fact was not known until the wheat heads appeared, and could not have been determined before that time. As a result of the use of the Conley seed, the farmers' yields were seven or eight bushels per acre less than they would have been if Selkirk seed had been sowed. The farmers recovered damages, representing the loss of yield, from Northern, which then sought, and obtained, reimbursement from its insurer. In interpreting a provision similar to "I. Coverage B" in the instant case, the St. Paul court said, "the `accident' here occurred when the damage to the wheat crop of Northern's customers appeared." In other words, it was the result which flowed from sale of the improper seed wheat which was defined as "the accident", and not the causal error, which was the sale of Conley seed. Applying that reasoning to the case at bar, the "accident" occurred when the damage to the building appeared, which was after the plaintiffs had taken title to and possession of the property. Therefore, at the time of the accident, the property was no longer property in the possession or control of the insured, but the "property of others". Thus, even if insurer's theory is adopted, it does not help that company to avoid liability in this case.
Insurer contends, however, that if this theory is adopted, it explains and thereby removes the ambiguity of which plaintiffs complain. Insurer contends that this clearly follows from the reasoning of the St. Paul case, in which the Court said that the exclusionary clause (which was similar to the exclusionary clause in this case) "denies coverage to an insured for damages occasioned to his own goods or work product by reason of its internal defectiveness." The Court in that case, however, had reference to liability insurance coverage similar to that of (3) (c) (1), "products" liability, and did not have reference to "operations" liability. Therefore, the quoted statement is not applicable to the instant situation, and the ambiguity of which plaintiffs complain remains.
The principle that where there is ambiguity in an insurance policy, it must be interpreted in favor of the insured is firmly established in this circuit. St. Paul, supra; Hartford Accident & Indem. Co. v. Kuipers Construction Co., 327 F.2d 333 (8th Cir. 1964). There is no question that the accident occurred while the property was in the possession of plaintiffs and that it is within the operations coverage, if Exclusion (h) (4) does not apply. When (3) (c) (2) and Exclusion (h) (4) are juxtaposed, the ambiguity of which plaintiffs complain is apparent. As the meaning of this exclusion is ambiguous, the question of whether or not the exclusion applies in this case must be decided in favor of plaintiffs, who stand in the same position as the insured in this respect.
Insurer states in its brief that although the pleadings raise a number of issues insurer is willing to stand on the sole question of the applicability of Exclusion (h) (4), for in insurer's judgment, this single clear-cut issue fully disposes of the entire case. For the reasons stated above, this Court has concluded that it has jurisdiction, that plaintiffs have standing to sue, (clause 11 of the insurance policy) that plaintiffs have been damaged in the amount of $13,300 (the difference between the amount of the judgment rendered in the Circuit Court and the amount paid on that judgment by Lindgate), that the damage of which plaintiffs complain falls within the provisions of Coverage B, (3) (c) (2), and that these damages are not precluded from coverage by Exclusion (h) (4). Insurer has not alleged and proved that *985 plaintiffs' failure to conform to clauses 8 and 9 by its delay in giving notice prejudiced insurer's case in any way, nor has insurer raised any affirmative defenses. Therefore, plaintiffs are entitled to recover $13,300 under the insurance policy, and judgment for that amount, plus plaintiffs' costs, will be entered in favor of plaintiffs.