KANSAS CITY INSULATION COM-
PANY, Appellant,

v.

AMERICAN MUTUAL LIABILITY IN-
SURANCE COMPANY, Appellee.

No. 19098.

United States Court of Appeals
Eighth Circuit.

Dec. 11, 1968.

Rehearing Denied Jan. 6, 1969.

Glenn E. McCann, of Knipmeyer, Mc-Cann & Millett, Kansas City, Mo., for appellant.

Donald K. Hoel, of Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, Mo., for appellee; William G. Zimmerman, Kansas City, Mo., with him on brief.

Before VAN OOSTERHOUT, Chief Judge, and GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

On this appeal, we are called upon to determine whether a comprehensive general liability insurance policy affords coverage for a property damage claim in favor of Kansas City Insulation Company ("Kansas City"), appellant here and garnishing judgment creditor below. Jurisdiction is established by diversity of citizenship between the contending parties and an adequate amount in controversy. Prior to the proceedings below, Kansas City brought a civil action against T. F. Scholes of Arkansas, Inc. ("Scholes") in the United States District Court for the District of Colorado. During that litigation, Scholes, as an insured, requested defense of that suit from its comprehensive general insurer, American Mutual Liability Insurance Company ("insurer"), pursuant to the policy in question here. The insurer de-

clined coverage on the basis that the claim was not within the designated policy risk. Thereafter, in early 1963, Kansas City obtained judgment by default against Scholes for the sum of $13,081.17 and now has brought a garnishment proceeding in aid of execution against the insurer. The court below determined that the insurer's policy did not cover Kansas City's claim. Kansas City appeals from that determination. We affirm.

The policy of insurance had been written and issued by the insurer to Scholes in Reading, Pennsylvania. The insurer and Kansas City agreed that Pennsylvania law would apply to the present controversy.

Scholes was a general contractor and had been engaged in the construction of an underground potable-water system for the United States Air Force Academy at Colorado Springs, Colorado. Scholes had commenced work on the project in July of 1957 and had completed the work during April of 1958. In the latter month, final acceptance inspections were made by Academy construction representatives and by April 14, 1958, Scholes had no men, equipment or offices in the State of Colorado and did no further work under the Air Force Academy contract.

After Scholes had finished in Colorado, it purchased from the insurer the comprehensive liability insurance policy described below. During the Colorado operations, Scholes had been insured under a similar policy, issued by the United States Fidelity and Guaranty Company, which terminated on April 25, 1958, the day after the commencement date of the policy here in question. On June 15, 1958, about two months after Scholes had completed construction, a water main on the Academy potable-water system ruptured. Subsequent investigation revealed that the break was due to an improper installation of a gate valve at an intersection of water pipes causing the valve to "blow off" under pressure. That incident caused water damage to insulating material stored by Kansas City in a nearby building. The alleged negligence of Scholes and the consequent damage to Kansas City's property formed the basis of the Colorado judgment in favor of Kansas City.

The insurance policy in question is complex. The insurer agreed with the named insured, Scholes,[1] subject to the limitations of liability, exclusions, conditions and other terms of the policy, to protect the insured against claims for bodily injury and property damage, viz.:

"

Coverage B—PROPERTY DAMAGE LIABILITY [2]

TO PAY on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

"

The policy period extended for one year following April 24, 1958. The front page of the contract further recited:

"3. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

---

1. The face of the policy listed T. F. Scholes, Inc., but an endorsement listed the following as named insureds:
 T. F. Scholes, Inc.
 T. F. Scholes, Inc. of Ohio
 T. F. Scholes, Inc. of Virginia
 T. F. Scholes, Inc. of New Jersey
 T. F. Scholes of Arkansas, Inc.
 T. F. Scholes of North Carolina, Inc.

2. Coverage A, not reproduced here, provided protection in standard policy language for bodily injury claims.

| COVERAGES | LIMITS OF LIABILITY | | ADVANCE PREMIUMS |
|---|---|---|---|
| A—Bodily Injury Liability | $ 200,000.<br>$ 500,000.<br>$ EXCLUDED SEE END. 1 | each person<br>each accident<br>aggregate products | * |
| B—Property Damage Liability | $ 50,000.<br>$ 100,000.<br>$ 100,000.<br>$ EXCLUDED SEE END. 1<br>$ 100,000. | each accident<br>aggregate operations<br>aggregate protective<br>aggregate products<br>aggregate contractual | *<br><br>* " |

*Matter omitted

———◆———

The various hazards included and excluded in the policy are listed as follows:

"DESCRIPTION OF HAZARDS

| The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this policy. | *** | *** | *Advance Premiums*<br>Coverage<br>A | Coverage<br>B |
|---|---|---|---|---|
| (a) Premises-Operations<br>SEE SCHEDULE ATTACHED | | | 423.70 | 448.16 |
| (b) Elevators Type<br>TO BE DETERMINED ON AUDIT | | | | |
| (c) Independent Contractors<br>TO BE DETERMINED ON AUDIT | | | | |
| (d) Products (Including Completed<br> Operations)<br>EXCLUDED SEE END. 1 (F 1928) | | | | |
| (e) Contracts as Defined in Condition 3<br>SEE ENDS. 5, 6 AND 7 | | | 38.50 | 19.15" |

———◆———

Endorsement No. 1 attached to the policy recited:

"It is agreed that the policy does not apply to the products hazard as defined therein."

Thus, it seems from the enumeration of coverages and the applicable endorsements that the hazards for premises-operations, elevators, independent contractors and contracts were included in the coverage and a premium was charged or to be charged therefor, while the hazard under the title "Products (Including Completed Operations)" was excluded.

The excluded hazard, i. e. the product hazard, is specifically defined in the policy in the following pertinent language:

"(c) Products Hazard. The term 'products hazard' means

(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the

accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured * * *

(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; * * * "

This type of policy has been before the courts on many occasions and its structuring is noted in Ocean Accident & Guar. Corp. v. Aconomy Erectors, Inc., 224 F.2d 242 (7th Cir. 1955); Standard Accident Ins. Co. v. Roberts, 132 F.2d 794 (8th Cir. 1942).

Appellant Kansas City contends that its judgment is covered under the provisions of the American Mutual liability policy on the following analysis:

(1) Notwithstanding that the policy was not in effect at the time the work was performed by Scholes, the water damage nevertheless occurred during the policy period.

(2) The "premises-operations" hazard refers to a schedule attached to the policy. Such schedule lists "Code No. 3499: SEWER CONSTRUCTION-ALL OPERATIONS-". Appellant submits that the language of the schedule specifically covers all operations involved in sewer construction.[3] The exclusion for the prod-

ucts hazard, *including completed operations*, is ambiguous, according to appellant's contention, and thus the insurer is not able to avoid liability under the judgment. Further, in order to give some effect to the products-hazard exclusion and to construe the alleged ambiguity against the insurer, Kansas City contends that the exclusion relates to products manufactured, sold, handled or distributed by the insured, but not to contracting work such as that completed by Scholes.

We do agree with appellant's contention that, if the policy is otherwise applicable, the loss occurred within the policy period. By an endorsement, the policy definition of an accident is

"deemed to include continuous or repeated exposure to conditions which result in injury during the policy period, provided such injury is accidentally caused. All damage arising out of such exposure to substantially the same general conditions shall be considered as arising out of one accident."

The actual damage to Kansas City's property occurred subsequent to April 24, 1958, and within the insurer's policy period. In policies of this type, the date of the accident or loss and not the date of the negligent act controls. Utilities Construction Corp. v. Peerless Ins. Co., 233 F.Supp. 64 (D.Vt.1964); Nielson v. Travelers Indemnity Co., 174 F.Supp. 648 (N.D.Iowa 1959), aff'd, 277 F.2d 455 (8th Cir. 1960); Peerless Ins. Co. v. Clough, 105 N.H. 76, 193 A.2d 444 (1963). Cf. Zingale v. American Surety Co. of New York, 105 Ohio App. 16, 146 N.E.2d 317 (1957).

In analyzing the coverage of similar policies, courts have found the coverage to be ambiguous, complex or incomprehensible.[4]

---

3. While the loss occurred on a potable-water line, the nature of Scholes' work for the Air Force Academy is described as construction of sanitary sewer, storm sewer, potable-water and gas lines. The parties do not dispute that such work does fall under the general classification "Sewer Construction".

4. "The true meaning of the policy is difficult to determine. An examination of it involves a physical effort of no mean proportions. Starting out with three printed pages, the first of which consists largely of a form which is filled in on a typewriter, the reader is confronted also with six physically attached supple-

There has been considerable difficulty in drawing the line between an insured's operations which are covered under the "Premises-Operations" hazard and those completed operations which may not be covered where, as in the present case, the "Products (Including Completed Operations)" hazard has been excluded. The problem is particularly troublesome in cases involving contractors, as distinguished from suppliers of a product, as demonstrated in *Nielson*, supra, in which Judge Graven's opinion noted:

"The products hazard provision does not usually give rise to unusual difficulty as to liability insurance coverage where there is only involved the manufacture or sale of what is commonly known and regarded as a product. Where the transaction involves a contract between an independent contractor and an owner for the erection of a structure and the contractor furnishes material for the structure, greater difficulty is encountered as to liability insurance coverage under the products hazard provision. However, when the contract involves a contract between an independent contractor and an owner for the rendering of services which do not involve the furnishing or supplying of any product or material, the question of liability insurance coverage under the products hazard provision becomes most difficult." 174 F.Supp. at 653–654.

A substantial number of courts, both state and federal have limited the completed-operations exclusion clause to apply only to those claims arising from products manufactured, sold, handled or distributed by the named insured.[5]

However, with other circumstances, other cases hold that the exclusion for

---

ments, or riders, inconveniently assorted into different sizes. If he is possessed of reasonably physical dexterity, coupled with average mental capacity, he may then attempt to integrate and harmonize the dubious meanings to be found in this not inconsiderable package. A confused attempt to set forth an insuring agreement is later assailed by such a bewildering array of exclusions, definitions and conditions, that the result is confounding almost to the point of unintelligibleness. To describe the policy as ambiguous is a substantial understatement." Ocean Accident & Guar. Corp. v. Aconomy Erectors, Inc., 224 F.2d 242, 247 (7th Cir. 1955).
"The instant case presents yet another illustration of the dangers of the present complex structuring of insurance policies." Insurance Co. of North America v. Electronic Purification Co., 67 A.C. 692, 63 Cal.Rptr. 382, 433 P.2d 174, 182 (Cal.1967).

5. Illustrative cases include Nielson v. Travelers Indemnity Co., 174 F.Supp. 648 (N.D. Iowa 1959), aff'd, 277 F.2d 455 (8th Cir. 1960). (See discussion, infra, at fn. 7) McNally v. American States Ins. Co., 308 F.2d 438 (6th Cir. 1962). (Elevator repair and inspection, though completed, was held a continuing operation because the completed-operations exclusion dealt with the handling of products and not a continuing obligation under

an elevator service contract.) Insurance Co. of North America v. Electronic Purification Co., supra, fn. 4. (Repair of swimming pool wiring was excluded from coverage since completed-operation portion of products-hazard exclusion referred to workmanship on products.)
Pure contracting work without furnishing any material is not within the "completed operations" paragraph of the "Products Hazard" exclusion. Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958); King v. Mason, 95 So.2d 705 (La.App.1957), aff'd, 234 La. 299, 99 So.2d 117 (1958). As noted in *King*:

"The reference to the accident occurring after the operations have been completed and abandoned at or away from the premises owned, rented or controlled by the insured means nothing more than the accidents occurring by reason of handling of products or goods, after any agreement to sell, rent or deliver the goods has been completed or the goods have been abandoned." 95 So.2d at 719.

Even where the contractor provides materials or equipment in connection with the project, the same rationale has been held applicable and the insurance carrier liable notwithstanding the "products hazard" exclusion. Insurance Co. of North America v. Electronic Purification Co., supra; New Amsterdam Cas. Co. v. Addison, 169 So.2d 877 (Fla.App.1964).

products hazard (including completed operations) contains unambiguous language and the insurer is not responsible for losses due to accident occurring after the insured has completed contracting work.[6]

This circuit has dealt with the problem in several diversity cases, but none specifically applying Pennsylvania law.[7] In this case, we are charged under *Erie* with deciding the legal issues in accordance with applicable Pennsylvania law.

The Pennsylvania cases furnish a guidelight but no clear beacon. In Clauss v. American Automobile & Ins. Co., 175 F.Supp. 641 (E.D.Pa.1959), the issue under Pennsylvania law was whether a sewer contractor's liability policy, similar to that here contested, applied to an accident occurring three months after the contractor had completed his work which included excavation and repair of streets. A motorist had been injured when his automobile went out of control on a city street, allegedly due to a condition resulting from the contractor's negligent excavation and repair work. Upon the contractor's seeking protection from his insurer, the court held that the products-hazard exclusion was not ambiguous and the accident occurring after completion of the work was not covered. Relying on *Clauss*, the appellee in the present case asserts that his judgment in the district court below ought to be affirmed.[8]

6. Waterman Steamship Corp. v. Snow, 222 F.Supp. 892 (D.Or.1963), aff'd, 331 F.2d 852 (9th Cir. 1964) (insecticide spraying, both product and services, no coverage); Orchard v. Agricultural Ins. Co. of Watertown, New York, 228 F.Supp. 564 (D.Or.1964), aff'd, 340 F.2d 948 (9th Cir. 1965) (alleged "operation" in supplying wrong automobile part, no coverage); Green v. Aetna Ins. Co., 349 F.2d 919 (5th Cir. 1965) (repair, reworking and return of part from customer's drilling rig, no coverage); Neumann v. Wisconsin Natural Gas Co., 27 Wis.2d 410, 134 N.W.2d 474, 478–79 (1965) (excavation unit struck gas main, no coverage due to products-hazard endorsement); Pan American Ins. Co. v. Cooper Butane Co., 157 Tex. 102, 300 S.W.2d 651 (1957) (no coverage for explosion of butane gas tank after repairs had been completed).

7. Applying Arkansas law in Standard Accident Ins. Co. v. Roberts, 132 F.2d 794 (8 Cir., 1942), this Court held the products exclusion applicable and there was no coverage after completion of work for damages arising out of the negligent installation of a gas refrigerator. In General Cas. Co. of Wisconsin v. Larson, 196 F.2d 170 (8 Cir., 1952), applying Minnesota law, the exclusion was held inapplicable since the insured's repair work on an oil burner was not completed. In Employer's Liability Assur. Corp. v. Youghiogheny & Ohio Coal Co., 214 F.2d 418 (8 Cir., 1954), applying Ohio law as to the insurance contract, this Court held that a products-hazard exclusion did not preclude coverage of a claim arising from injuries caused by the insured's negligent loading of a freight car. In *Nielson*, supra, an excavating contractor damaged a gas main during construction. After completion of the construction job, an explosion occurred. The comprehensive liability policy covered premises and operations but excluded the products hazard. The products-hazard exclusion, relating to completed operations, was found in conflict with the premises-operations coverage scheduled as "Sewer Construction—All Operations". Applying Iowa law, the exclusion was found to be ambiguous and the policy was held to cover injuries sustained from the explosion. In Bituminous Cas. Corp. v. R & O Elevator Co., 293 F.2d 179 (8 Cir., 1961), decided under Minnesota law, this Court held that periodic maintenance of an elevator under an elevator service contract requiring continual inspections was not a completed operation within a like policy exclusion.

8. The court in *Clauss* found no ambiguity in the use if the terms "all operations", "completed operations" and mere "operations".

" 'Premises—Operations' hazard is listed separate and apart from 'Products (including completed) Operations' which indicates a difference between operations and completed operations and the fact that they are to be rated and paid for separately. A further indication is found on the attached Schedule relating to 'Premises—Operations', which shows that the term 'All Operations' refers to the activities and actual work of the contractor in relation to a

Plaintiff-appellant Kansas City claims that the Pennsylvania law is to the contrary, relying on Gehrlein Tire Co. v. American Employers Ins. Co., 243 F. Supp. 577 (W.D.Pa.1964), aff'd per curiam, 348 F.2d 918 (3rd Cir. 1965). In that case, the Gehrlein Tire Company reassembled a truck tire and rim and redelivered the unit to an owner-customer. Subsequently, the customer, in installing the tire unit on his truck, was injured when the repaired tirerim assembly exploded. The injured customer recovered a judgment against Gehrlein for negligently not warning of the defective condition of the wheel rim and Gehrlein sought to have his insurer satisfy the judgment under a liability policy similar to that in the instant case. The court held that the policy covered the accident and determined that the completed-operations portion of the products-hazard exclusion was not applicable because the negligence of Gehrlein was based on its failure to warn of a defect and that failure to warn was a continuing duty.[9] Appellee would distinguish *Gehrlein* since the case involved services only while Scholes provided both services and materials. Such distinction is tenuous.

Both parties gain solace from Eastcoast Equipment Co. v. Maryland Cas. Co., 207 Pa.Super. 383, 218 A.2d 91 (1966); appellee because a similar comprehensive policy with a products-hazard exclusion was held to be not ambiguous; appellant because the court construed the policy to afford coverage for the particular loss. *Eastcoast* dealt with a ma-chinery dealer's alleged misrepresentations in the sale of a large crane, the boom of which later fell and caused injuries to third parties. The insured, having been absolved of liability, sought recovery of the cost of defending the lawsuits arising from the incident from the insurer who had refused to participate in the earlier litigation. The case was decided on the basis of "construction" of the policy. The court held that the machinery dealer's representations were of a continuing nature and, thus, an "uncompleted operation". The court did not resort to the ambiguity rationale in its decision.[10]

While Pennsylvania cases afford no clear-cut guidelines and cases elsewhere support either the position of the appellant or that of the appellee, we need not pick and choose among the competing rationale of conflicting cases nor attempt to reconcile diverse holdings.

 An examination of the typewritten schedules of the policy convinces us that there is no ambiguity as to the accident that occurred at the Air Force Academy following the insured's completion of its work.

The hazards are listed in the policy as follows:

"SCHEDULE

Code No.

3444: Railroad construction—N.O.C.—all operations—including laying, relaying or removal of tracks or maintenance of way by contractors. Bridge building other than temporary bridges or trestles,

---

certain project and does not include completed operations.
* * * The term 'All Operations' would not be equivalent to completed operations in light of what was stated above to be the obvious difference between an operation and a completed operation. Since this policy is so specific in its exclusion of the 'Products Hazard', any language that would avoid this exclusion should be equally specific, * * * " 175 F.Supp. at 644.

9. "Here was a service performed by Gehrlein not on a Firestone product nor on any other product that Gehrlein sold or handled. The liability resulted from Gehrlein's failure to warn Heid of a defect in Heid's own tire assembly, said the State Court. If this Comprehensive Liability Policy doesn't cover that situation, then this Court is unable to say that it covers anything." 243 F.Supp. at 580.

10. This case falls within the ambit of Waterman Steamship Corp. v. Snow, 222 F. Supp. 892 (D.Or.1963), aff'd, 331 F.2d 852 (9th Cir. 1964).

tunneling construction or work on elevated railroads, logging railroads or street railways to be separately rated.

3449: Sewer construction—all operations—including tunneling at street crossings. All other tunneling to be separately rated.

3450: Street or road construction or reconstruction—clearing of right-of-way, excavation, filling or grading, bridge or culvert building. Tunneling and bridge or culvert building where clearance is more than 10 feet at any point or the entire distance between terminal abutments exceeds 20 feet, to be separately rated.

3484: Salesmen, collectors or messengers—outside.

3485: Clerical office employees—N.O.C.

5200: Concrete or cement sidewalk, driveway, yard, airport runway or warming apron construction.

5213: Concrete construction—N.O.C.—including foundations, making, setting up or taking down forms, scaffolds, falsework or concrete distributing apparatus. Excavation, pile driving and all work in sewers, tunnels, subways, caissons or coffer dams to be separately rated.

5506: Street or road paving or repaving, surfacing or resurfacing or scraping, clearing of right-of-way, earth or rock excavation, filling or grading, tunneling, bridge or culvert building, quarrying, or stone crushing to be separately rated." [11]

Following pages of the policy list the hazards that are applicable in some thirty-five states. For example, in Arkansas the hazards listed are Code Nos. 3444 (referring to railroad construction, etc.); 3449 (sewer construction, etc.); 3450 (street and road construction, etc.); 3485 (clerical); 5200 (concrete, etc. construction); 5213 (other concrete construction); and 5506 (street, etc. paving), and omitting Code No. 3484 (salesmen, etc.). The scheduling for other states lists one or more hazards. The listing for Colorado is specific and the only hazard scheduled is Code No. 3485: "Clerical Office Employees-N.O.C.".

■■ Scholes purchased the instant policy after he had withdrawn his men and equipment from the Academy project and had left Colorado. The policy schedules demonstrate that the risk of construction operations, of any kind—completed or uncompleted, were not intended to be covered in Colorado during the policy period. The failure to schedule a construction-operations hazard for Colorado, while such coverage was scheduled for other states, removes any possible obfuscation in the interrelation of the operations-coverage clause and the completed-operations exclusion. A *Nielson*-type ambiguity is not present here. This conclusion is independently supported by the affidavit, stipulated as evidence, of Franklyn L. Hornberger, former president of T. F. Scholes of Arkansas, Inc., who had personal knowledge of the Colorado project. Mr. Hornberger's affidavit testimony, reproduced below,[12] indicates that the insured was not misled as to coverage and did not purchase coverage for the "Products Hazard" relating to the completed Air

11. The letters "N.O.C." mean "No Other Classification". See Standard Accident Ins. Co. v. Roberts, 132 F.2d 794, 797 (8th Cir. 1942).

12. "* * * After April 14, 1958, T. F. Scholes of Arkansas, Inc., performed no other work on the contract above mentioned and had no men, equipment or offices in the State of Colorado.
At the time that T. F. Scholes of Arkan-

sas, Inc. started work on the Air Force Academy contract aforesaid, the company was insured under a general comprehensive liability insurance policy issued by United States Fidelity and Guaranty Company, policy No. CGA 128837. Said policy of insurance by USF&G was canceled on April 25, 1958. This cancellation occurred after T. F. Scholes of Arkansas, Inc. had completed the Air Force Academy contract aforesaid, after

Force Academy work. While the claimant is entitled to a construction of the policy resolving an ambiguity in its favor,[13] nevertheless such affidavit testimony demonstrated that there was no misunderstanding between insurer and the insured.

Considering extrinsic circumstances and viewing the policy as a whole, we find no ambiguity in the application of the policy to Kansas City's claim. See, Float-Away Door Co. v. Continental Cas. Co., 372 F.2d 701 (5th Cir. 1966), cert. denied, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); Hodgins v. American Mutual Liability Ins. Co., 261 F.Supp. 129 (E.D.Pa.1966); Gruber Personnel Services, Inc. v. Indemnity Ins. Co. of North America, 212 Pa.Super. 120, 239 A.2d 880 (1968); Miller v. Lindgate Developers, Inc., 274 F.Supp. 980 (E.D. Mo.1967). Cf. Snader v. London & Lancashire Indemnity Co. of America, 360 Pa. 548, 62 A.2d 835 (1949).[14] Kansas City's loss is not covered under the policy.

The judgment is affirmed.

---

the work done under said contract had been accepted by the Air Force and after T. F. Scholes of Arkansas had removed its men and equipment from the job. T. F. Scholes of Arkansas, Inc. was a named insured under a policy of insurance, No. CGL 37956, purchased by T. F. Scholes, Inc. from American Mutual Liability Insurance Company in Reading, Pennsylvania. The effective dates of such policy were from April 24, 1958 to April 24, 1959. This policy was not intended to and did not in fact come into effect until after T. F. Scholes of Arkansas, Inc. had completed the Air Force Academy contract aforesaid.

At the time T. F. Scholes of Arkansas, Inc. purchased the American Mutual Liability Insurance Company's policy No. CGL 37956, it was understood by T. F. Scholes of Arkansas, Inc. that said policy contained endorsement No. 1 which was 'Exclusion of Products Hazard', which exclusion included completed operations. No premiums were charged by the American Mutual Liability Insurance Company, nor were any premiums paid by or on behalf of T. F. Scholes of Arkansas, Inc. for any completed operations coverage."

13. An insured's judgment creditors stand in the same position as the insured with respect to an ambiguity in a liability policy and are entitled to have the policy liberally construed in favor of the insured as well as an innocent plaintiff. Miller v. Lindgate Developers, Inc., 274 F.Supp. 980 (E.D.Mo.1967); Hodgins v. American Mutual Liability Ins. Co., 261 F. Supp. 129 (E.D.Pa.1966); see Float-Away Door Co. v. Continental Cas. Co., 372 F.2d 701 (5th Cir. 1966), cert. denied, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed. 2d 76 (1967).

14. While we are here called upon to determine the issues under the *Erie* doctrine, cases in the same context may not arise in Pennsylvania or elsewhere hereafter. A new comprehensive general liability insurance policy, including a new method of structuring, has been promulgated by the insurance industry effective October 1, 1966. 1966 A.B.A., Insurance, Negligence and Compensation Section, 265 et seq.